| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| SEAN A. O'KEEFE – State Bar No. 122417<br>OKEEFE & ASSOCIATES<br>LAW CORPORATION, P.C.<br>130 Newport Center Drive, Suite 140<br>Newport Beach, CA 92660<br>Telephone: (949) 534-6990<br>Facsimile: (949) 590-4987<br>Email: sokeefe@okeefelawcorporation.com<br>Counsel to So-Cal Capital, LLC,<br>agent for secured creditors | |
| ☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>Andrew W. Spanswick, | CASE NO.: 2:19-bk-22427-BR |
|---|---|
| | CHAPTER: 7 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE: 12/17/2019<br>TIME: 10:00 am<br>COURTROOM: 1668 |

**Movant:** So-Cal Capital, Inc.

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 11/18/2019

OKEEFE & ASSOCIATES LAW CORPORATION, P.C.
Printed name of law firm (if applicable)

Sean A. O'Keefe
Printed name of individual Movant or attorney for Movant


/s/ Sean A. O'Keefe
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☒ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 1155 North La Cienega, # 1114
   *Unit/suite number*:
   *City, state, zip code*: West Hollywood, California 90069

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __B__ ):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☒ 7  ☐ 11  ☐ 12  ☐ 13
   was filed on (*date*) __10/21/2019__ .

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

         (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) ☐ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) ☒ Other (*see attached continuation page*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 3                                    **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
           ☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12
           trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not
           been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to
    § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or
    30 days after the court determined that the Property qualifies as "single asset real estate" as defined in
    11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay,
    hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or
           court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have
    been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed
    with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☒ Other *(specify)*:   **Relief from stay as limited by stipulation attached as exhibit.**

6. **Evidence in Support of Motion:  (D**ecl*aration(s) MUST be signed under penalty of perjury and attached to this
motion)*

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set
    forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case
    commencement documents are attached as Exhibit E____.

d. ☐ Other:

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

                                               **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under:   ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)   ☒ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐ Confirmation that there is no stay in effect.

5.  ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  11/18/2019

OKEEFE & ASSOCIATES LAW CORP., P.C.
Printed name of law firm (*if applicable*)
Sean A. O'Keefe
Printed name of individual Movant or attorney for Movant

/s/ Sean A. O'Keefe
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Patrick Lacy _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

   c. ☒ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

      *Street address*: 1155 North La Cienega, Unit 1114
      *Unit/suite no.*:
      *City, state, zip code*: West Hollywood, California 90069

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
      Los Angeles County: Recording number - 20190141801 (See Exhibit B Supplemental Declaration of Patrick Lacy)

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

a. ☒ Debtor's principal residence      b. ☐ Other residence
c. ☐ Multi-unit residential      d. ☐ Commercial
e. ☐ Industrial      f. ☐ Vacant land
g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

a. ☒ Sole owner

b. ☐ Co-owner(s) (*specify*):

c. ☐ Lienholder (*specify*):

d. ☐ Other (*specify*):

e. ☐ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

f. ☐ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.
The deed was recorded on (*date*) _____.

7. Movant holds a  ☐ deed of trust ☐ judgment lien ☐ other (*specify*) _____
that encumbers the Property.

a. ☒ A true and correct copy of the document as recorded is attached as Exhibit _B___.

b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
attached as Exhibit _A___.

c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 1,440,000 |
| b. | Accrued interest: | $ | $ | $ 70,895 |
| c. | Late charges | $ | $ | $ 2,760 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 5,500 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of (*date*): | $ | $ | $1,519,155 |

h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

a. Notice of default recorded on (*date*) _____ or ☒ none recorded.

b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

c. Foreclosure sale originally scheduled for (*date*) _____ or ☐ none scheduled.

d. Foreclosure sale currently scheduled for (*date*) _____ or ☐ none scheduled.

e. Foreclosure sale already held on (*date*) _____ or ☐ none held.

f. Trustee's deed upon sale already recorded on (*date*) _____ or ☐ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017        Page 7        F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ 13,800 _____ for the month of November _____ 20 19.

    b. Number of payments that have come due and were not made: 2 ____. Total amount: $ 27,600 _____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

    An additional payment of $ 13,800 _____ will come due on (*date*) 12/01/2019 , and on the 1st day of each month thereafter. If the payment is not received within 10 ___ days of said due date, a late charge of $ 1,320 _____ will be charged to the loan.

    d. The fair market value of the Property is $ 750,000 _____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☒ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit E .

        (4) ☐ Other (*specify*):

    e. **Calculation of equity/equity cushion in Property:**

    Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Quicken Loans | $  409,697 | $ |
| 2nd deed of trust: | So-Cal Capital, LLC as agent for lenders | $  550,000 | $ 1,519,155 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |

**TOTAL DEBT:** $ 959,697 (debtor's numbers)

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit E ____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☒ Relevant portions of the Debtor's schedules.

        (3) ☒ Other (*specify*): See also Supplemental Declaration of Patrick Lacy

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
    I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 0 _____ and is 0 _____ % of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
    By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 0 _____.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☐ Estimated costs of sale: $ 37500 _____ (estimate based upon _5_____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (Chapter 12 and 13 cases only) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (or concluded on) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (if applicable): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                $
(For details of type and amount, see Exhibit _____)

e. Attorneys' fees and costs:                                                              $
(For details of type and amount, see Exhibit _____)

f. Less suspense account or partial paid balance:                            $[                    ]

TOTAL POSTPETITION DELINQUENCY:                            $

g. Future payments due by time of anticipated hearing date (if applicable): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on (date) _____
$_____ received on (date) _____
$_____ received on (date) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (attach LBR form F 4001-1.DEC.AGENT.TRUSTEE).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (specify):



18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      2. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      3. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


___11/18/2019___      Patrick Lacy_____      _____
*Date*                 *Printed name*                          *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                  Page 11                **F 4001-1.RFS.RP.MOTION**

# ATTACHMENTS

1. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF STIPULATIONS GRANTING LIMITED RELIEF FROM STAY

2. SUPPLEMENTAL DECLARATION OF PATRICK LACY (Exhibits A through G)

3. SUPPLEMENTAL DECLARATION OF SEAN A. O'KEEFE (Exhibit H and I)

So-Cal Capital, LLC ("So-Cal") submits the within Memorandum of Points and Authorities in support of the attached Motion for Relief From Stay. The Supplemental Declaration of Patrick Lacy (the "Lacy Declaration" or "Lacy Decl.") and the Supplemental Declaration of Sean A. O'Keefe (the "O'Keefe Declaration" or "OKeefe Decl.") are submitted in support hereof.

## I

## **SUMMARY OF RELEVANT FACTS**

### A.    **The Secured Debt Held By So-Cal**.

So-Cal is in the business of arranging loans secured by real property and it acts as the servicing agent for the lenders who hold percentage interests in the loans it arranges. So-Cal retains the promissory notes, deeds of trust and other lending documents for the lenders it represents as servicing agent.

So-Cal is the duly appointed and acting agent for the below listed lenders:

Michael Moser, Trustee of The One to Four Profit Plan; Provident Trust Group FBO Steven G. Stein IRA; Marc B. Pannier and Christy L. Pannier, as Trustees of the Marc & Christy Pannier Family Trust established June 7, 2012 ; Shaya Investments, LLC, a California limited liability company; IRA Services Trust Company, CFBO of Robert J Accinelli; Charles D. Burke, Trustee of The Charles D. Burke Trust UTD June 20, 2006; Lauren Accinelli, Incumbent Trustee of the Lauren Accinelli Living Trust U/D/T dtd November 12, 2010; Roger Burke, a married man as his sole and separate property; Ellen Jasnosz, Trustee of the Ellen Jasnosz 2002 Trust Dated 5/17/02; Mark Steven Melanson and Merri Gwen Melanson, Trustees of the Melanson Family Trust dated May 28, 2003; Jonathan Posell, a married man as his sole and separate property

(Together the "Loan Participants"). So-Cal arranged a loan (the "Loan") by and among the Loan Participants, as lenders, and Alan Jason Coe ("Coe"), Mark R. Honzel ("Honzel"), and Andrew W. Spanswick ("Spanswick") as borrowers (the latter are collectively the "Borrowers") on February 12, 2019.

The Loan was documented by a Promissory Note dated February 12, 2019. A true and correct copy of the Note is attached as Exhibit "A" to the attached declaration of Patrick Lacy (the "Lacy Declaration" or the "Lacy Decl."). Concurrently with the execution of the Note, the Borrowers executed that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture filing (the "Deed of Trust") also dated February 12, 2019. A true and correct

1   copy of the Deed of Trust is attached to the Lacy Declaration as Exhibit "B."

2       The Deed of Trust is recorded against the following real properties: 5046 Cofler Lane,

3   Valley Village, California 91607 (the "Cofler Lane Property"), 6431 West 5th Street, Los Angeles,

4   California 90048 (the "5th Street Property") and 1155 North La Cienega Boulevard, Unit 1114 (the

5   "La Cienega Property").

6       The principal balance due on the Note is $1,440,000. As of October 31, 2019, $27,235.62

7   in interest and $1,320.50 in costs had accrued under the Note, The balance due and owing on the

8   Note as of said date was $1,468,556.46, exclusive of legal fees.

9      **B.**     **The Bankruptcy Filings**.

10      Coe filed a petition under Chapter 7 of the United States Bankruptcy Code on August 1,

11   2019 initiating Chapter 7 case number 2:19-bk-19011-BR (the "Coe Case"). The Cofler Lane

12   Property is an asset of the Coe bankruptcy estate. True and correct copies of Schedule B and

13   Schedule D filed in the Coe Case are attached to the Lacy Declaration as Exhibit "C." In Schedule

14   B, Coe lists the value of the Cofler Lane Property at $1,600,000. In Schedule D Coe represents that

15   the Cofler Lane Property is subject to a first lien securing a debt owed to Caliber Loans in the

16   amount of $419,220, and a second lien securing the balance owed on the Note.

17      Honzel filed a petition under Chapter 11 of the United States Bankruptcy Code on August

18   7, 2019 initiating Chapter 11 case number 2:19-bk-19206-BR (the "Honzel Case"). The 5th Street

19   Property is an asset of the Honzel bankruptcy estate. True and correct copies of Schedule B and

20   Schedule D filed in the Honzel Case are attached to the Lacy Declaration as Exhibit "D." In

21   Schedule B, Honzel lists the value of the 5th Street Property at $1,853,000. In Schedule D, Honzel

22   represents that the 5th Street Property is subject to a first lien securing a debt owed to Boston

23   Private Bank in the amount of $750,000, and a second lien securing the balance owed on the Note.

24      Spanswick filed a petition under the United States Bankruptcy Code on October 21, 2019

25   initiating Chapter 7 case number 2:19-bk-22427-BR (the "Spanswick Case"). The La Cienega

26   Property is an asset of the Spanswick bankruptcy estate. True and correct copies of Schedule B and

27   Schedule D filed in the Spanswick Case are attached to the Lacy Declaration as Exhibit "E." In

28   Schedule B, Spanswick lists the value of the La Cienega Property at $750,000. In Schedule D,

1    Spanswick represents that the La Cienega Property is subject to a first lien securing a debt owed to

2    Quicken Loans in the amount of $409,697.00, and a second lien securing the balance owed on the

3    Note.

4    If the balance owed on the Note is allocated between the Cofler Lane Property, the 5th

5    Street Property, and the La Cienega Property, there is sufficient collateral value available to pay all

6    secured claims and additional funds remain thereafter. The schedule attached to the OKeefe

7    Declaration as Exhibit "G" presents one possible payoff scenario. Accordingly, the creditors

8    holding the first lien positions on the property remain adequately protected. So-Cal, in contrast, is

9    not adequately protected since it faces the risk of forfeiting its collateral if the senior lienholders

10   are granted relief from stay.

11   **C.       The Stipulations Granting So-Cal The Right To Limited Relief From Stay.**

12   The Trustees in the Coe and Spanswick Cases, and Honzel, in his own case, have stipulated

13   to allow So-Cal relief from stay for the limited purpose of recorded notices of default against the

14   Cofler Lane Property, the 5th Street Property, and the La Cienega Property. These stipulations are

15   attached to the OKeefe Declarations as Exhibits "H", "I" and "J" (the "RFS Stipulations").

16   **II**

17   **LEGAL AUTHORITIES**

18   So-Cal has been working with the Trustees in the Coe and Spanswick Cases, and counsel in

19   the Honzel Case, to facilitate the consensual disposition of the Cofler Lane Property and the 5th

20   Street Property under conditions that would allow Honzel to pay off the balance owed on the Note

21   within an abbreviated time frame. The RFS Stipulations were entered into to protect So-Cal

22   pending the completion of these dispositions.

23   So-Cal believes that the senior lenders in the above cases should not be granted relief from

24   stay at this point in time, since they are all adequately protected by an ample equity position and

25   equity exists for the three estates over and above So-Cal's debt. However, if the Court is inclined

26   to grant any senior lender relief from stay it is critical that So-Cal be afforded relief first, otherwise

27   it will unable to protect its collateral and the Coe, Spanswick and Honzel estates will be

28   unnecessarily diluted by a substantial "sold-out-junior" claim.

1    Pursuant to <u>United States v. Timbers of Inwood Forest</u>, 484 U.S. 365, 108 S. Ct 626

2    (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. §363(e) is the

3    "value of the collateral" that is subject to the secured creditor's lien.  Under the <u>Timbers</u>' holding,

4    the focus is on whether the secured creditor's collateral will not decline in value prospectively.

5    <u>Timbers</u>, 484 U.S. 365; <u>In Re Ledgemere Land Corp.</u>, 116 B.R. 338, 343 (Bankr. D.Mass. 1990)

6    (so long as the receivables being collected and used by the debtor are being replaced by sufficient

7    new receivables in which the creditor is granted a security interest, the creditor is adequately

8    protected); <u>In re Johnson</u>, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (since value of the collateral

9    has not declined, the bank is not impaired and is not entitled to receive adequate protection

10    payments). None of the senior lienholders in the pending cases faces any risk of a collateral

11    decline that will impair the full recovery of their debt. The Loan Participants represented by So-

12    Cal, in contrast, face the loss of their collateral if the senior lienholders are granted relief from

13    stay. Accordingly, So-Cal would respectfully submit that unless the Court should grant So-Cal

14    relief from stay pursuant to the Stipulations to protect its interest in the collateral and deny relief

15    from stay to the well-protected senior lenders.

16    DATED: November 18, 2019                          OKEEFE & ASSOCIATES
17                                                       LAW CORPORATION, P.C.

18                                                            /s/ Sean A. O'Keefe
                                                       By: _____
19                                                          Sean A. O'Keefe, attorneys
20                                                          for William Tsumpes

21

22

23

24

25

26

27

28

1

## <u>DECLARATION OF PATRICK LACY</u>

2        I, Patrick Lacy, hereby declare and state as follows:

3        1.      I am over the age of eighteen years.

4        2.      The facts stated herein are within my personal knowledge and if called upon to

5    testify to the same I could and would testify competently thereto.

6        3.      I am employed as an officer by So-Cal Capital, Inc. ("So-Cal") and in this capacity

7    I am duly authorized to make this declaration on behalf of So-Cal.

8        4.      So-Cal is in the business of arranging loans secured by real property.

9        5.      So-Cal acts as the servicing agent for the lenders who hold percentage interests in

10   the loans it arranges.

11       6.      So-Cal retains the promissory notes, deeds of trust and other lending documents for

12   the lenders it represents as servicing agent.

13       7.      In my capacity as an officer of So-Cal, I supervise the maintenance, preparation and

14   retention of So-Cal's books and records.

15       8.      So-Cal's books and records are maintained in the ordinary course, in a consistent

16   and business-like manner.

17       9.      So-Cal is the duly appointed and acting agent for the below listed lenders:

18   Michael Moser, Trustee of The One to Four Profit Plan; Provident Trust Group
     FBO Steven G. Stein IRA; Marc B. Pannier and Christy L. Pannier, as Trustees of
19   the Marc & Christy Pannier Family Trust established June 7, 2012 ; Shaya
     Investments, LLC, a California limited liability company; IRA Services Trust
20   Company, CFBO of Robert J Accinelli; Charles D. Burke, Trustee of The Charles
     D. Burke Trust UTD June 20, 2006; Lauren Accinelli, Incumbent Trustee of the
21   Lauren Accinelli Living Trust U/D/T dtd November 12, 2010; Roger Burke, a
     married man as his sole and separate property; Ellen Jasnosz, Trustee of the Ellen
22   Jasnosz 2002 Trust Dated 5/17/02; Mark Steven Melanson and Merri Gwen
     Melanson, Trustees of the Melanson Family Trust dated May 28, 2003; Jonathan
23   Posell, a married man as his sole and separate property
24

25   (Together the "Loan Participants").

26       10.     So-Cal arranged a loan (the "Loan") by and among the Loan Participants, as

27   lenders, and Alan Jason Coe ("Coe"), Mark R. Honzel ("Honzel, and Andrew W. Spanswick

28   ("Spanswick") as borrowers (the latter are collectively the "Borrowers") on February 12, 2019.

11.     The Loan was documented by a Promissory Note dated February 12, 2019. A true and correct copy of the Note is attached hereto as Exhibit "A."

12.     Concurrently with the execution of the Note, the Borrowers executed that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture filing (the "Deed of Trust") also dated February 12, 2019. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B."

13.     The Deed of Trust is recorded against the following real properties: 5046 Cofler Lane, Valley Village, California 91607 (the "Cofler Lane Property"); 6431 West 5th Street, Los Angeles, California 90048 (the "5th Street Property") and 1155 North La Cienega Boulevard, Unit 1114, West Hollywood, California 90069 (the "La Cienega Property").

14.     The principal balance due on the Note is $1,440,000. As of November 18, 2019, $70,895 in interest and $2,760 in costs had accrued under the Note. The balance due and owing on the Note as of said date, inclusive of October's legal fees, is $1,519,155.

15.     Coe filed a petition under Chapter 7 of the United States Bankruptcy Code on August 1, 2019 initiating Chapter 7 case number 2:19-bk-19011-BR (the "Coe Case").

16.     The Cofler Lane Property is an asset of the Coe bankruptcy estate.

17.     Attached hereto as Exhibit "C" are true and correct copies of Schedule B and Schedule D filed in the Coe Case. In Schedule B, Coe lists the value of the Cofler Lane Property at $1,600,000. In Schedule D Coe represents that the Cofler Lane Property is subject to a first lien securing a debt owed to Caliber Loans in the amount of $419,220, and second lien securing the balance owed on the Note.

18.     Honzel filed a petition under Chapter 11 of the United States Bankruptcy Code on August 7, 2019 initiating Chapter 11 case number 2:19-bk-19206-BR (the "Honzel Case").

19.     The 5th Street Property is an asset of the Honzel bankruptcy estate.

20.     Attached hereto as Exhibit "D" are true and correct copies of Schedule B and Schedule D filed in the Honzel Case. In Schedule B, Honzel lists the value of the 5th Street Property at $1,853,000. In Schedule D, Honzel represents that the 5th Street Property is subject to a

1   first lien securing a debt owed to Boston Private Bank in the amount of $750,000, and second lien

2   securing the balance owed on the Note.

3       21.    Spanswick filed a petition under the United States Bankruptcy Code on October 21,

4   2019 initiating Chapter 7 case number 2:19-bk-22427-BR (the "Spanswick Case").

5       22.    The La Cienega Property is an asset of the Spanswick bankruptcy estate.

6       23.    Attached hereto as Exhibit "E" are true and correct copies of Schedule B and

7   Schedule D filed in the Spanswick Case. In Schedule B, Spanswick lists the value of the La

8   Cienega Property at $750,000. In Schedule D, Spanswick represents that the La Cienega Property

9   is subject to a first lien securing a debt owed to Quicken Loans in the amount of $409,697.00, and

10  a second lien securing the balance owed on the Note.

11      24.    Attached hereto as Exhibit "F" is a true and correct copy of stipulation signed by

12  Coe's Chapter 7 trustee authorizing So-Cal to record a notice of default with respect to the Cofler

13  Lane Property, subject to the approval of the bankruptcy court.

14      25.    Attached hereto as Exhibit "G" is a true and correct copy of stipulation signed by

15  Honzel's counsel authorizing So-Cal to record a notice of default with respect to the 5th Street

16  Property, subject to the approval of the bankruptcy court.

17      I declare that the foregoing is true and correct under the penalty of perjury.

18      Executed this _18th_ day of November 2019, in Orange County, California.

19

20

21                         _____

                          Patrick Lacy

22

23

24

25

26

27

28

**EXHIBIT "A"**

Loan No.: 219020

## PROMISSORY NOTE
Fixed Rate - Monthly Payments

Loan Amount:  $1,440,000.00                                    Date: February 12, 2019

FOR VALUE RECEIVED, the undersigned, Mark R. Honzel, M.D. as trustee of The Mark R. Honzel, M.D. Trust dated October 21, 2010, Alan Jason Coe, an unmarried man, Andrew W. Spanswick, an unmarried man ("Borrower"), whose address for purposes of this Promissory Note ("Note") is 6431 W. 5th Street, Los Angeles, CA 90048, 5046 Cofler Lane Valley Village, CA 91607, 1155 N. La Cienega Blvd #1114, West Hollywood, CA 90069, PROMISES TO PAY to the order of the lenders identified on **Exhibit B**, or order (collectively, the "Lender"), at c/o So-Cal Capital, Inc., 20280 SW Acacia Street, Suite 115, Newport Beach, CA 92660, or such other place as the Lender may specify, the principal sum of One million, four hundred forty thousand dollars, ($1,440,000.00), or so much thereof as may be disbursed to Borrower for the benefit of Borrower, together with interest thereon, to be paid in lawful money of the United States of America.

 1.  Security.  This Note is secured, without limitation, by that certain Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents, dated as of even date of this Note by Borrower to and in favor of So-Cal Capital, Inc., a California corporation, as trustee for the benefit of Lender (the "Security Document"), on certain real property and personal property defined therein as the Trust Property.  Capitalized terms used, but not defined, herein shall have the meanings set forth in the Security Document.

 2.  Interest.  Borrower promises to pay interest on the unpaid principal balance from the day upon which funds are deposited with the closing agent and/or when any proceeds of the Loan are advanced on behalf of Borrower (the "Date of Disbursement") until repayment in full, at the rate per annum equal to the "Interest Rate," as defined below.  The term "Interest Rate," as used herein, means the rate or rates of interest applicable to all or portions of the outstanding balance of the Loan, as set forth below.  Interest on this Note shall be computed on the basis of a 365-day year.

 (a)  "Interest Rate."  The "Interest Rate" shall mean a fixed rate of interest equal to Eleven and a half percent (11.50%) per annum.

 (b)  "Default Rate."  From and after the Maturity Date (as defined in Section 3 below), or an earlier date on which an Event of Default (as defined in the Security Document) occurs, all sums owing under this Note, the Security Document or any other Loan Documents (relating back to any applicable due date or date of default and without notice), shall bear interest until paid in full at a rate equal to ten percent (10.00%) per annum in excess of the rate of interest specified above ("Default Rate").  All interest accrued at the Default Rate shall be immediately due and payable. No delay or omission on the part of the Lender hereof in exercising any right under this Note or any of the Loan Documents shall operate as a waiver of such right. The application of this Default Rate shall not be interpreted or deemed to extend any cure period set forth in any Loan Document. If Lender elects to apply the Default Rate, that election shall not limit any of Lender's other rights and remedies under the Note, Security Document and Loan Documents, including, but not limited to, foreclosure, and the right to compel prompt performance under this Note.

 3.  Repayment Terms and Maturity Date.  Payments shall be payable in installments as follows:

| Number of Installments | Amount of Installment | Due Date of Installment |
|---|---|---|
| 24 | Thirteen thousand, eight hundred (13,800.00) | Monthly starting April 1, 2019 March 1, 2021 ("Maturity Date") |

On the Maturity Date an amount equal to the entire outstanding principal balance of this Note, together with all accrued and unpaid interest and all other amounts remaining outstanding under the Loan Documents shall be due (the "Final Payment"). In the event any payment other than the Final Payment is not received by the close of business on the tenth day after the Due Date, a late charge in the amount of ten percent (10%) of the late payment will be assessed in addition to any applicable Default Rate. In the event the Final Payment is not received by the close of business on the tenth day after the Due Date, a late charge in the amount of five percent (5%) of the late Final Payment will be assessed in addition to any applicable Default Rate. The Borrower acknowledges that it would be extremely difficult or impracticable to determine Lender's actual damages resulting from any late payment and this late charge is a reasonable estimate of those damages. Lender agrees to accept this late charge as its sole right to monetary damages for any late payment. Acceptance of any late charge shall not constitute a waiver of the default with respect to the overdue amount, and shall not limit any of the Lender's other rights under this Note, Security Document or the Loan Documents.

4. Allocation of Payments. All payments on this Note will be applied first to the payment of any costs, fees, late charges or other charges incurred or payable to Lender and for which Borrower is obligated in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; then to the reduction of the principal balance; or in any other order that Lender reasonably requires. Notwithstanding anything to the contrary contained herein, after the occurrence and during the continuation of any event of default, all amounts received from Borrower or from any party shall be applied in such order as Lender, in its sole discretion, may elect.

5. Acceleration. If Borrower fails to pay when due any sums payable under this Note, or an Event of Default occurs or Borrower fails to perform when due any obligation, covenant or agreement in this Note, Security Document, or other security instruments which secure this Note, or in any other document executed by Borrower to induce Lender to make the loan evidenced by this Note (collectively the "Loan Documents") or any other event or condition occurs that, under the terms of the Security Document or any other Loan Document, gives rise to a right of acceleration of sums owing under this Note, then Lender, at its sole option, will have the right to declare all sums owing under the Note immediately due.

6. Prepayment.

☐    No Prepayment Premium

☒    Lock-in:  Borrower may elect to prepay the outstanding principal balance of the Loan in full, but not in part, together with accrued but unpaid interest, upon thirty (30) days advance written notice to Lender, whereupon Lender will issue a written payoff demand identifying the payment required to pay the Loan in full. In the event of a prepayment during the first 4 months from the first day of the first calendar month following the close of escrow, prepayment is subject to payment of a prepayment premium calculated as 4 months interest on 100% of the prepayment amount, less any interest already paid on the prepayment amount from the first day of the first month following the close of escrow. Following the 4th full calendar month of the loan term, Borrower may make such prepayment without a prepayment fee.

☐    Half Life of Loan: Borrower may elect to prepay the outstanding principal balance of the Loan in full, but not in part, together with accrued but unpaid interest, upon thirty (30) days advance written notice to Lender, whereupon Lender will issue a written payoff demand identifying the payment required to pay the Loan in full.  In the event of a prepayment during the first _____ months from the first day of the first

Initials _____  Initials _____  Initials _____

calendar month following the close of escrow, prepayment is subject to payment of a prepayment premium calculated as three months interest on 100% of the prepayment amount. Following the _____ full calendar month of the loan term, Borrower may make such prepayment without a prepayment premium.

☐    Full Life of Loan: Borrower may elect to prepay the outstanding principal balance of the Loan in full, but not in part, together with accrued but unpaid interest, upon thirty (30) days advance written notice to Lender, whereupon Lender will issue a written payoff demand identifying the payment required to pay the Loan in full. In the event of payment of principal, a prepayment premium will apply. The fee will be six months interest on 100% of the prepayment amount, or all remaining interest payments on the loan not yet otherwise due and payable, whichever is less.

☐    Borrower may not prepay the loan either in whole or in part.

If an Event of Default and the Lender accelerates payment of the indebtedness, the Lender shall suffer damages and opportunity costs which are now difficult or impossible to ascertain. Therefore, if that occurs, Borrower shall pay to the Lender, as liquidated damages and not as a penalty, and in addition to the entire balance of principal and accrued interest and all other sums then due under this Note and the Security Document, an amount equal to the prepayment premium above computed as if the entire unpaid balance of this Note were prepaid on the date of default.

Borrower waives all rights under California Civil Code Section 2954.10 which provides, in part, as follows:

AN OBLIGEE WHICH ACCELERATES THE MATURITY DATE OF THE PRINCIPAL AND ACCRUED INTEREST, PURSUANT TO CONTRACT, ON ANY LOAN SECURED BY A MORTGAGE OR DEED OF TRUST ON REAL PROPERTY UPON THE CONVEYANCE OF ANY RIGHT, TITLE, OR INTEREST IN THAT PROPERTY, MAY NOT CLAIM, EXACT, OR COLLECT ANY CHARGE, FEE, OR PENALTY FOR ANY PREPAYMENT RESULTING FROM THAT ACCELERATION.

Borrower acknowledges that the Lender bargained for this waiver as part of the consideration that induced the Lender to enter into this transaction. Borrower initials this paragraph for the purpose of evidencing its understanding of Civil Code Section 2954.10 recited in part above and the Maker's agreement to the waiver of its terms.

INITIAL: _____    _____    _____

The failure to collect a prepayment penalty at the time a prepayment is received shall not be deemed a waiver of such penalty and any such penalty calculated in accordance with this section shall be payable on demand.

Any partial prepayment shall be applied against the outstanding principal balance and shall not postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender shall otherwise agree in writing.

7.    No Offset. Borrower will pay to Lender all sums owing under this Note without deduction, offset, or counterclaim of any kind. The relationship of Borrower and Lender under this Note is solely that of borrower and lender, and the loan evidenced by this Note and secured by the Security Document will in no manner make Lender the partner or joint venturer of Borrower. Borrower acknowledges that there is no fiduciary relationship between Borrower and Lender.

8.    No Assignment by Borrower or Assumption. This Note may not be assumed. Any attempt to assign or assume Borrower's rights and/or obligations of this Note or of any of the Loan Documents shall constitute a material

default of this Note and each of the Loan Documents, entitling Lender to exercise any and all remedies available to it, including, but not limited to, acceleration of all sums owed under the Note and foreclosure under the Security Document.

9. <u>No Transfers or Encumbrances</u>. This Promissory Note is the Note referred to in, and is entitled to the benefits of, the Security Document and the Other Security Documents. Among the provisions of the Security Document is the following paragraph 11:

"11. <u>Encumbrance or Transfer of the Trust Property</u>.

(a) <u>Encumbrance</u>. Except for the liens securing the Indebtedness, Trustor will not create or permit to continue in existence any mortgage, pledge, encumbrance, lien, or charge of any kind (including purchase money and conditional sale liens) on any of the Trust Property except for:

(i) liens for taxes not yet delinquent, and

(ii) any other liens or charges that are specifically approved in writing by Beneficiary prior to the recordation of this Deed of Trust.

Any transaction in violation of this paragraph 11 will cause all Indebtedness, irrespective of the maturity dates, at the option of the holder and without demand or notice, to immediately become due, together with any prepayment premium in accordance with the terms of the Note.

(b) <u>Transfer</u>. Trustor acknowledges that Beneficiary has examined both the creditworthiness of Trustor and Trustor's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Trustor's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Indebtedness. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Trustor defaults in the repayment of the Indebtedness, Beneficiary can recover the Indebtedness by a sale of the Trust Property. Trustor shall not, without the prior written consent of Beneficiary, assign, transfer or convey the right to manage or control the operation of any part of the Trust Property. A sale, transfer or conveyance within the meaning of this paragraph shall be deemed to include:

(i) an installment sales agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments;

(ii) an agreement by Trustor leasing all or a substantial part of the Trust Property (except as provided in paragraph 21(d)), or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents;

(iii) if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest;

(iv) if Trustor is a general or limited partnership, joint venture, or other form of partnership (a "Partnership"), a transfer of any general partnership interest or the admission of any new general partner; and

(v) if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties so as to reduce the ownership interest of any manager to less than fifty-one percent (51%) or so as to change the control of the current manager over the company or partnership.

Initials ___  Initials ___  Initials ___

Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Indebtedness immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property."

10. <u>Remedies Cumulative</u>. Acceptance by Lender of any payment for less than what is due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default. The rights or remedies of Lender, as provided in this Note, the Security Document or any of the Other Security Documents, or as provided at law or in equity shall be cumulative and concurrent, and may be pursued singly, jointly or successively against the Trust Property, Leases, Rents or any other funds, property or security held by Lender for the payment or performance thereof, or against Borrower, any Guarantor or otherwise, at the sole discretion of Lender.

11. <u>Joint and Several Liability.</u> This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them and their heirs, personal representatives, successors and assigns. The makers, endorsers and guarantors of this Note severally waive presentment, demand for payment, protest and notice of non-payment.

12. <u>No Waivers or Modifications</u>. This Note shall not be amended, modified or changed, nor shall any waiver of any of its provisions be effective unless accomplished by an instrument in writing signed by the party against whom enforcement of any amendment, modification, change or waiver is sought. No waiver or failure or delay by Lender in acting with respect to the terms of this Note, the Security Document, or the other Loan Documents will constitute a waiver of any other breach, default, or failure of condition under this Note, the Security Document, or the other Loan Documents.

13. <u>Collection Costs and Attorneys Fees</u>. Borrower and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness agree to pay all costs of collection, including reasonable attorneys' fees. If any attorney is engaged by Lender to enforce or construe any provision of this Note, the Security Document, or the other Loan Documents or as a consequence of any Event of Default, with or without the filing of any legal action or proceeding, then Borrower will immediately pay to Lender on demand all attorney fees and other costs incurred by Lender, including reasonable fees attributable to in-house counsel, together with interest from the date of the demand until paid at the Default Rate.

14. <u>Usury Savings Clause</u>. Notwithstanding anything herein or in any related Loan Document to the contrary, it is not the intention of the parties to charge or pay, nor shall there at any time be charged or paid, any interest (whether fixed, variable or otherwise) that would result in a rate of interest being paid in excess of the maximum rate permitted to be charged by applicable law. In the event that any sum in excess of the maximum legal rate of interest is paid, that amount shall, immediately upon discovery thereof, be deemed to have been a prepayment of principal (which prepayment shall be permitted without premium or penalty) as of the date of such receipt, and all payments made thereafter shall be appropriately reapplied to interest and principal to give effect to the maximum interest rate permitted by applicable law. After such reapplication, any excess payment shall be immediately refunded to Borrower.

15. <u>Miscellaneous</u>. Whenever used herein, the words "Borrower" and "Lender" shall be deemed to include their respective successors and Lender's assigns. If this Note is executed by more than one person or entity as Borrower, the obligations of each person or entity will be joint and several. No person or entity will be a mere

Initials _____ Initials _____ Initials _____

accommodation maker, but each will be primarily and directly liable.  Borrower waives presentment; demand; notice of dishonor; notice of default or delinquency; notice of acceleration; notice of protest and nonpayment; notice of costs, expenses, or losses and interest; notice of interest on interest and late charges; and diligence in taking any action to collect any sums owing under this Note or in proceeding against any of the rights or interests to properties securing payment of this Note.  All endorsers, guarantors, sureties, and accommodation parties hereby consent to any and all renewals, extensions or modifications of the terms hereof, including time for payment.  Any such renewals, extensions or modifications may be made without notice to any of said parties.  Time is of the essence with respect to the performance of each of the covenants and agreements contained in this Note.

16. <u>Notices</u>.  Any notice required or permitted to be given under this Note shall be given in the manner set forth in the Security Document.

17. <u>Governing Law</u>.  This Note shall be governed by and construed in accordance with the applicable laws of the State of California (without regard to principles of conflicts of law) except to the extent (a) of procedural and substantive matters relating only to the creation, perfection and foreclosure of liens, and enforcement of rights and remedies against the Trust Property, which matters shall be governed by the laws of the State in which such Trust Property is located and (b) that the laws of the United States of America and any rules, regulations or orders issued or promulgated thereunder, applicable to the affairs and transactions entered into by Borrower, otherwise pre-empt California law or the laws of the State in which the Trust Property is located, in which event such Federal law shall control.

18. <u>Severability</u>.  Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Note.

19. <u>Dispute Resolution</u>.  Any and all disputes arising out of or relating to this Note or any of the Loan Documents shall be resolved by binding arbitration between the parties pursuant to the Dispute Resolution provisions contained in the Security Document.

20. <u>Entire Agreement</u>.  This Note and the other Loan Documents set forth the entire understanding between Borrower and Lender and they will not be amended except by a written instrument duly executed by each Borrower and Lender.  Any previous representations, warranties, agreements, and understandings among the parties regarding the subject matter of the Loan or the Loan Documents, whether written or oral, are superseded by this Note and the other Loan Documents.

**THIS NOTE CONTAINS PROVISIONS WHICH WILL REQUIRE A BALLOON PAYMENT AT MATURITY.**

*[SIGNATURE PAGE TO FOLLOW]*

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note effective as of the date first above written.

BORROWER:

Mark R. Honzel, M.D. as trustee of The Mark R. Honzel, M.D. Trust dated October 21, 2010, Alan Jason Coe, an unmarried man, Andrew W. Spanswick, an unmarried man

_____     2/12/19
Mark Honzel, Trustee                 Date

_____     2.12.19
Alan Jason Coe                       Date

_____     2-12-19
Andrew W. Spanswick                  Date

Initials _____ Initials _____ Initials _____

Loan No.:  219020

## **EXHIBIT B**
### to PROMISSORY NOTE
#### (Lender Description)

Michael Moser, Trustee of The One to Four Profit Plan as to an undivided 51.388889 percent interest to Seven hundred forty thousand ($740,000.00); Provident Trust Group FBO Steven G. Stein IRA as to an undivided 10.763889 percent interest to One hundred fifty-five thousand ($155,000.00); Marc B. Pannier and Christy L. Pannier, as Trustees of the Marc & Christy Pannier Family Trust established June 7, 2012 as to an undivided 6.944444 percent interest to One hundred thousand ($100,000.00); Shaya Investments, LLC, a California limited liability company as to an undivided 6.944444 percent interest to One hundred thousand ($100,000.00); IRA Services Trust Company, CFBO of Robert J Accinelli as to an undivided 5.555556 percent interest to Eighty thousand ($80,000.00); Charles D. Burke, Trustee of The Charles D. Burke Trust UTD June 20, 2006 as to an undivided 5.208333 percent interest to Seventy-five thousand ($75,000.00); Lauren Accinelli, Incumbent Trustee of the Lauren Accinelli Living Trust U/D/T dtd November 12, 2010. as to an undivided 3.472222 percent interest to Fifty thousand ($50,000.00); Roger Burke, a married man as his sole and separate property as to an undivided 3.472222 percent interest to Fifty thousand ($50,000.00); Ellen Jasnosz, Trustee of the Ellen Jasnosz 2002 Trust Dated 5/17/02 as to an undivided 2.777778 percent interest to Fourty thousand ($40,000.00); Mark Steven Melanson and Merri Gwen Melanson, Trustees of the Melanson Family Trust dated May 28, 2003 as to an undivided 1.736112 percent interest to Twenty-five thousand ($25,000.00); Jonathan Posell, a married man as his sole and separate property as to an undivided 1.736111 percent interest to Twenty-five thousand ($25,000.00)

All held at:
So-Cal Capital, Inc.,
as Designated Agent for Beneficiary(s) at
20280 SW Acacia Street, Suite 115,
Newport Beach, CA 92660

**EXHIBIT "B"**




**This page is part of your document - DO NOT DISCARD**



# 20190141801



**Pages:
0038**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/15/19 AT 03:07PM**

| | |
|---|---|
| FEES: | 195.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 270.00 |



**L E A D S H E E T**



201902153340027

**00016275483**



009636730

**SEQ:
04**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



*E497026*

RECORDING REQUESTED BY

**Chicago Title Company**
AND WHEN RECORDED MAIL DOCUMENT TO:

NAME   So-Cal Capital, Inc.

STREET
ADDRESS   20280 SW Acacia Street, Suite 115

CITY, STATE &
ZIP CODE   Newport Beach, CA 92660

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY

WHEN RECORDED, RETURN TO:

So-Cal  CAPITAL, INC.
20280 SW Acacia Street, Suite 115
Newport Beach, CA 92660

Title Order No.: 73719000519-RCM
A.P.N.(s): 5510-008-007, 2357-007-022, 5555-006-172

Loan No.:  219020

Above Space for Recorder's Use

### DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING ("Deed of Trust"), made effective as of February 12, 2019 by Mark R. Honzel, M.D. as trustee of The Mark R. Honzel, M.D. Trust dated October 21, 2010, Alan Jason Coe, an unmarried man, and Andrew W. Spanswick, an unmarried man  ("Borrower"), whose address 6431 W. 5th Street, Los Angeles, CA 90048, TO AND IN FAVOR OF So-Cal Capital, Inc. ("Trustee"); FOR THE BENEFIT OF the persons identified in **Exhibit B** (collectively, the "Beneficiary"), whose address is c/o So-Cal Capital, Inc., 20280 SW Acacia Street, Suite 115, Newport Beach, CA 92660.

WITNESSETH:

BORROWER DOES IRREVOCABLY GRANT, TRANSFER, AND ASSIGN to Trustee, in trust, with power of sale, all Borrower's right, title, and interest now owned or later acquired in the real property (the "Premises") and the buildings, structures, additions, enlargements, lot line adjustment additions, extensions, modifications, repairs and improvements now or hereafter constructed or located thereon (the "Improvements") more particularly described in **Exhibit A** attached hereto.

TOGETHER WITH all rights, title, interest and estate of Borrower now owned or hereafter acquired in the following property, rights, interests, and estates (collectively with the Premises and Improvements called the "Trust Property"):

(a) All easements, rights-of-way, public or private, now or hereafter used in connection with the Premises, strips of land, streets, public places, opened or proposed, alleys, passages, sewer rights, mineral rights, shares of stock pertaining to water or water rights and powers, and all estates, rights, titles, interests, privileges, tenements, hereditaments and appurtenances, and accessions thereto, of any nature, in any way belonging, relating or pertaining to the Premises and the reversion and reversions, remainder and remainders, and all land laying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, courtesy and rights of courtesy, property, possession, claim and demand, both in law and in equity, of Borrower in the Premises and every part thereof and all appurtenances thereto;

(b) All machinery, furniture, equipment, fixtures, materials, appliances and other articles of personal property of every kind owned by Borrower, or in which Borrower has an interest or at any time in the future acquires to become attached to or situated on or in connection with the operation of the Trust Property, located upon or delivered

Non-Order Search                                  Page 3 of 38                        Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

to the Premises, and appurtenances thereto, and usable for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration, or for ventilating or air conditioning purposes, or for sanitary or drainage purposes, or for the exclusion of vermin or insects, or for removal of dust, refuse or garbage, and such machinery, furniture, equipment, fixtures and other articles of personal property which consist of all appliances, awnings, window shades, drapery rods, brackets, screens, floor coverings, incinerators and carpeting used in the operation of the Premises and Improvements (and all other personal property, either similar or dissimilar to the foregoing usable in the operation of the Premises and Improvements), together with all replacements and substitutions therefore, now owned or hereafter acquired by Borrower and located in or on said Premises and Improvements, together with all materials intended for construction, reconstruction, alteration, and repair of the Improvements (hereinafter collectively called the "Equipment"), together with all condemnation awards and rights under insurance policies and Leases described below pertaining to said Premises or the Improvements now or hereafter located thereon;

(c)  All awards or payments, including interest, all causes of action, claims, compensation and recoveries which may be made as to the Trust Property, whether from the exercise of the right of eminent domain, constructive taking or for any other injury to or decrease in the value of the Trust Property (collectively, "Awards");

(d)  All leases and other agreements affecting the use, enjoyment or occupancy of the Trust Property, (the "Leases"), now or hereafter existing on all or any part of the Trust Property, if any, and all rents and security deposits payable under the Leases, and other deposits, issues and profits from the Trust Property (the "Rents");

(e)  All Policies (as defined herein) and their proceeds thereof and any unearned premiums on any insurance policies covering the Trust Property, including, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Trust Property, whether such insurance is or is not required by this Deed of Trust;

(f)  All utility deposits made to obtain or maintain utility services to the Premises or the Improvements;

(g)  Any amounts in any escrow fund or Impound Account (as defined in paragraph 5 below) for the purposes of payment of taxes, insurance premiums or other Impositions (as defined in paragraph 4 below), all reserves, deferred payments, deposit refunds, cost savings and payments of any kind as to the Trust Property;

(h)  All building materials and supplies now or hereafter located upon the Trust Property and all architectural renderings, drawings, plans, specifications now or hereafter relating to the Trust Property;

(i)  All contracts and agreements, including but not limited to architect's contracts, construction contract's, engineering contracts now or hereafter existing relating to the design, construction or improvement of the Trust Property, and all soil and geological reports, economic or feasibility studies, engineering reports or studies and similar items used in connection with construction of any improvements on the Trust Property;

(j)  All deposits given to utilities and governmental authorities pertaining to the Trust Property;

(k)  All present and future governmental, utility and homeowner association approvals, permits and entitlements pertaining to the Trust Property; and

(l)  All renewals, replacements and substitutions of and additions, and the products and proceeds of, the property described in the above (a) through (k) inclusive, which to the fullest extent permitted by law, shall be deemed a part of the Trust Property.

FOR THE PURPOSE OF SECURING, in such order of priority as Beneficiary may elect the payment and prompt and complete performance of the following covenants, obligations, indebtedness, and liabilities:

(i)      all obligations of Borrower, including payment of an indebtedness in the original principal sum of One million, four hundred forty thousand dollars ($1,440,000.00) with interest thereon and late charges, if any, and all other amounts payable, under the Promissory Note of even date herewith executed by Borrower in favor of

Beneficiary (the "Note"), as well as any other substituted note and all modifications, renewals, or extension of the Note, regardless of whether evidenced by a new or additional promissory note or notes. The payee under the Note and all subsequent holders of the Note are collectively the "Beneficiary" and the indebtedness evidenced by the Note is the "Loan";

(ii)      all present and future loans, advances, or other extensions of credit obtained by Borrower from Beneficiary, and all promissory notes evidencing such present or future loans, advances, or other extensions of credit, including Borrower's obligations under any present or future loan or credit agreement executed by Borrower, including any other agreement granting additional security interests (collectively, "Other Security Documents"), and all liabilities that Borrower may now or in the future owe to Beneficiary;

Collectively the obligations referred to in (i) and (ii) above are called the "Indebtedness;"

(iii)      all other obligations under this Deed of Trust and the other Loan Documents (as defined in paragraph 2(c) below), collectively referred to as the "Obligations."

Notwithstanding any provision of this Deed of Trust to the contrary, in no event shall this Deed of Trust secure the Obligations of any guarantor ("Guarantor") arising exclusively under any guaranty on or about the same date (the "Guaranty") given by Borrower or any other person to Beneficiary.

1.    Warranty of Title.   Borrower warrants that it is the owner of the Trust Property and (a) Borrower has good title to the Trust Property, (b) Borrower has the unrestricted right to grant the security interests given in this Deed of Trust, (c) Borrower presently possesses an unencumbered fee simple estate in the Premises and the Improvements except for those shown in the title report for this transaction (the "Permitted Encumbrances"), and (d) this Deed of Trust is and will remain a valid and enforceable lien on and security interest in the Trust Property, subject only to the Permitted Encumbrances. Borrower shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust, subject to the Permitted Encumbrances, and shall forever warrant and defend the same to Beneficiary against the claims of all persons.

2.    Representations, Warranties and Covenants.   Borrower, and each party comprising Borrower (each a "Loan Party") represents, warrants and covenants to Beneficiary that as of the date of this Deed of Trust:

a.    Trust Property.

i.  All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Trust Property as currently operated (collectively, the "Licenses"), have or will be obtained and maintained in good standing (including, without limitation, any applicable liquor license). Borrower shall keep and maintain all Licenses. The Trust Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Trust Property.

ii.  All of the Improvements which were included in determining the appraised value of the Trust Property lie wholly within the boundaries and building restriction lines of the Trust Property, and no improvements on adjoining properties encroach upon the Trust Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements so as to affect the value or marketability of the Trust Property, except those which are insured against by the Beneficiary's policy of mortgagee's title insurance insuring the lien of this Deed of Trust. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

iii.  The Trust Property is not subject to any Leases other than the Leases described in the rent roll delivered to Beneficiary in connection with this Deed of Trust. No person has any possessory interest in the Trust Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are in good standing.

Non-Order Search                                     Page 5 of 38                        Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

iv.   The Trust Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants, including those instruments creating and governing condominium units or lots in a planned unit development, now or in the future relating to the ownership, construction, use or operation of the Trust Property.

v.   There has not been committed by Borrower or, to Borrower's knowledge, any other person in occupancy of or involved with the operation or use of the Trust Property, any act or omission affording the federal government or any state or local government the right of forfeiture as against the Trust Property or any part thereof or any monies paid in performance of Borrower's obligations under this Deed of Trust or any of the Other Security Documents. Borrower hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture.

vi.   Neither the execution nor delivery of the Note, this Deed of Trust, or the Other Security Documents, nor Borrower's performance thereunder, nor the recordation of this Deed of Trust, nor the exercise of any remedies by Beneficiary, will adversely affect Borrower's rights under any of the Licenses.

b.   <u>Organization of Borrower</u>.

i.   Borrower is an entity organized under the laws described in <u>California</u> and is qualified to do business in each state in which such qualification is required by law.

ii.   Borrower has the requisite power and authority to own and manage its properties, to carry on its business as now being conducted, and to own, develop, and operate the Trust Property.

iii.   Borrower is qualified to do business in every jurisdiction in which the nature of its business or its properties makes qualification necessary.

iv.   Borrower is in compliance with all laws, regulations, ordinances, and orders of public authorities applicable to it.

c.   <u>Loan Documents</u>.   The Note, this Deed of Trust, the Loan Placement and Fee Agreement and Term Sheet attached thereto, the Other Security Documents and all other documents, instruments and written agreements entered into by Borrower in connection with the Loan are hereinafter referred to as the "Loan Documents." The execution, delivery, and performance by Borrower and any guarantors of the Loan, together with their respective affiliates and their respective employees, representatives, and agents (the "Loan Parties") of the Loan Documents and the borrowings evidenced by the Note:

i.   are within the power of the Loan Parties,

ii.   have been duly authorized by all requisite corporate or partnership actions, as appropriate,

iii.   have received all necessary governmental approval,

iv.   will not violate any provision of law, any order of any court or agency of government, the charter documents of any Loan Party, or any indenture, agreement, or any other instrument to which any Loan Party is a party or by which any Loan Party or any of its property is bound, nor will they conflict with, result in a breach of, or constitute (with due notice and lapse of time) a default under any indenture, agreement, or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature on any of the property or assets of any Loan Party, except as contemplated by the provisions of the Loan Documents, and

219020 Master Docs_SCC_Merge (EP 1 31 19)                    4                    Initials _____ Initials _____ Initials _____

v.  will, when executed and delivered to Beneficiary, constitute a valid obligation, enforceable in accordance with its terms.

d.      Financial Condition.

i.  All financial statements and data that have been given to Beneficiary with respect to the Loan Parties are complete and correct in all material respects; accurately present the financial condition of that Loan Party on each date as of which they have been furnished, and accurately present the results of the operations of that Loan Party for the periods for which they have been furnished; and have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

ii.  All balance sheets and the notes with respect to the Loan Parties furnished to Beneficiary disclose all liabilities of the Loan Parties, fixed and contingent, as of their respective dates, as well as all obligations of those Loan Parties under any guaranties.

iii.  There has been no material and adverse change in the business or properties or condition (financial or otherwise) of Borrower, or the condition or operation of the Trust Property ("Material Adverse Change") since the date of the most recent financial statement given to Beneficiary with respect to Borrower of the Trust Property.

iv.  Borrower has no present contemplation of filing for relief under federal bankruptcy laws or commencing any case, proceeding, or other action seeking any reorganization, arrangement, composition, adjustment, liquidation, dissolution, or other relief for debtors.

v.  No Loan Party is the subject of any state or Federal tax audit or similar proceeding.

e.      Viability of Loan.  Borrower has independently reviewed the terms of the Loan and concluded that the Loan is economically viable and that Borrower can repay the Loan in accordance with its terms without additional financing (other than as previously may have been disclosed to Beneficiary in writing).  Except as previously disclosed to Beneficiary in writing, Borrower has no present contemplation of additional financing relating to or secured by the Property.

f.      Other Arrangements.  Borrower is not a party, and does not anticipate entering into, to any agreement or instrument materially and adversely affecting Borrower's present or proposed business, properties, assets, operation, or condition, financial or otherwise; and Borrower is not in default in the performance, observance, or fulfillment of any of the material obligations, covenants, or conditions in any agreement or instrument to which Borrower is a party that materially affect Borrower's present or proposed business, properties, assets, operation, or condition, financial or otherwise.  Borrower is acting solely on its own account and not on behalf of any third party.

g.      Litigation.  There is not now pending against or affecting any Loan Party, nor to the knowledge of any Loan Party is there threatened, any action, suit, or proceeding at law or in equity or before any administrative agency that, if adversely determined, would materially impair or affect:

i.  the financial condition or operations of Borrower, or

ii.  the condition or operation of the Trust Property.

h.      Survival.  The warranties of this paragraph will survive foreclosure or enforcement of this Deed of Trust and shall run with the Premises.

3.  Insurance. Borrower shall maintain in effect such fire, hazard and other types of insurance as may be required by Beneficiary. All insurance policies shall be issued by a carrier an in such amounts a form and with such

Non-Order Search                          Page 7 of 38                Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

endorsements as may be approved or required by Beneficiary and shall be endorsed with a standard non-contributory mortgagee clause in favor of Beneficiary. Borrower agrees not to adjust, compromise or settle any claim under any insurance required hereunder without the prior written consent of Beneficiary.

      a.    <u>Risks to be Insured and Policy Provisions.</u>  Subject to the provisions of paragraph 5 hereof, Borrower, at its sole cost and expense, will maintain or cause to be maintained in effect the following:

      i.    Commercial general liability (including contractual liability) insurance ("CGL Insurance") covering any and all liability of the insured arising out of the ownership, maintenance, use or occupancy of the Trust Property, and all operations incidental thereto, said insurance to have limits of not less than Two Million Dollars ($1,000,000.00) combined single limit per occurrence for bodily injury, personal injury and property damage liability;

      ii.    Insurance ("Building Insurance") on all buildings, fixtures and improvements located on the Trust Property against fire and "special perils" (including "ordinance or law coverage"), in amounts at least equal to the greater of: (A) the full replacement cost thereof (without deduction for depreciation) as such replacement cost shall be determined from time to time at the reasonable request of Beneficiary; or (B) unless prohibited by law, the unpaid principal amount of the Indebtedness. The Building Insurance shall include a co-insurance waiver or agreed amount endorsement. Such insurance shall, during the course of any construction of additions to the Improvements, be on Special Form Builder's Risk 100% Completed Value Non-Reporting Form or other form approved by Beneficiary;

      iii.    Insurance on personal property against fire and any peril generally included within the classification of "extended coverage" ("Personal Property Insurance") in amounts at least equal to the replacement value thereof;

      iv.    Rental value or business interruption insurance (or a combination thereof as Beneficiary may require) ("Rental Value or Business Interruption Insurance") on all buildings, fixtures, improvements, and other constructions located on and forming a part of the Trust Property as above described (including parking and common areas) against loss by the perils covered by the Building Insurance in amounts of not less than the amount of Borrower's annual gross income from the Trust Property or Borrower's debt service on the Trust Property (including any required payments to the Impound Account), for twelve (12) months, whichever is greater. Such Rental Value or Business Interruption Insurance shall contain an endorsement extending the period of indemnity for not less than ninety (90) days after restoration of said buildings, fixtures and improvements is completed;

      v.    If and whenever Borrower shall have employees, workers' compensation insurance as required by law and employer's liability insurance with limits of liability of not less than $2,000,000.00;

      vi.    If the Trust Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (the "Act"), Borrower shall keep the Trust Property covered by flood insurance ("Flood Insurance") up to the maximum limit of coverage available under the Act, but not in excess of the amount of the Indebtedness; and

      vii.    Such other insurance with respect to the Trust Property in such amounts and against such insurable hazards as Beneficiary from time to time may reasonably require ("Additionally Required Insurance").

    All insurance required hereunder, including the CGL Insurance (collectively, the "Policies"), shall provide that coverage shall not be revised, cancelled or reduced until at least thirty (30) days' written notice of such revision, cancellation or reduction shall have been given to Beneficiary; be issued by insurance companies which are qualified to do business in the State in which the Trust Property is located, which have at least one of the following A.M. Best Co. combinations of Best's Rating and Best Financial Size Category: A-, XV; A, XIII; A+, IX; or A++, VIII or such financial condition deemed acceptable by Beneficiary; and which are satisfactory to Beneficiary in all other ways.

Non-Order Search          Page 8 of 38          Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

The CGL Insurance shall name Beneficiary as an additional insured; apply severally as to Borrower and Beneficiary (excepting the limits of liability); cover each of them as insureds in the same manner as if separate policies had been issued to each of them (excepting the limits of liability); contain no provisions affecting any rights which any of them would have as claimants if not so named as insureds; and be primary insurance with any other valid and collectible insurance available to Beneficiary constituting excess insurance.

The Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, and Flood Insurance and any and all other insurance maintained by the Borrower related to the Trust Property, whether or not required by this Deed of Trust, shall name Beneficiary as an additional insured; and have attached to them a Lender's Loss Payable Endorsement naming Beneficiary as Lender, a standard waiver of subrogation endorsement, a stipulated amount endorsement, and a full replacement cost endorsement.

b.      Delivery of Policy.  Borrower will deliver to Beneficiary original certificates and evidence of all required insurance to Beneficiary and Borrower shall promptly furnish to Beneficiary copies of all renewal notices and all receipts of paid premiums received by it.  At least ten (10) days prior to the expiration date of a required policy, Borrower shall deliver to Beneficiary a renewal certificate and evidence of insurance in a form satisfactory to Beneficiary.

c.      Assignment of Policy.  If the Trust Property is sold at a foreclosure sale or if Beneficiary shall acquire title to the Trust Property, Beneficiary shall have all of the rights of Borrower to the Policies and the unearned premiums on them and to the proceeds resulting from any damage to Trust Property prior to such sale or acquisition.

d.      Notice of Damage or Destruction; Adjusting Loss.  If any part of the Trust Property is damaged or destroyed by fire or other casualty, Borrower will promptly give written notice thereof to the insurance carrier and Beneficiary, and will not adjust any damage or loss which exceeds $10,000 unless Beneficiary joins in such adjustment; but if there has been no adjustment of any such damage or loss within four months from the date of occurrence and if an Event of Default exists at the end of such four-month period or at any time thereafter, Beneficiary may alone make proof of loss, adjust and compromise any claim under the policies and appear in and prosecute any action arising from such policies.  In connection therewith, Borrower does hereby irrevocably authorize, empower and appoint Beneficiary as attorney-in-fact for Borrower (which appointment is coupled with an interest) to do any of the above in the name of Borrower.

e.      Application of Insurance Proceeds.  All sums in excess of $10,000 paid under any insurance policies relating to the Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, Flood Insurance or Additionally Required Insurance (collectively the "Proceeds"), shall be paid to Beneficiary which may, at its option (but subject to the provisions of this paragraph), apply them, after first deducting Beneficiary's expenses incurred in the collection thereof, to the payment of the Indebtedness, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine.  However, Beneficiary shall make all Proceeds (after first deducting therefrom Beneficiary's reasonable expenses incurred in collecting them) available to Borrower to reimburse Borrower for Borrower's reasonable costs of restoration, repair, replacement or rebuilding of the Improvements and Equipment, in accordance with procedures reasonably required by Beneficiary (and shall not be applied toward the payment of the Indebtedness until after restoration and repair of the Improvements and Equipment) provided:

i.   There is no Event of Default;

ii.  Borrower has notified Beneficiary of Borrower's intention to perform such restoration or repair within thirty (30) days after adjusting the loss or casualty;

iii.  Beneficiary receives reasonably satisfactory evidence that the Premises and Equipment have been fully restored or that by application of the Proceeds will be fully restored to their condition prior to the damage or destruction, free and clear of all liens other than the Permitted Encumbrances;

iv.  If, in the reasonable judgment of Beneficiary, the Proceeds will be insufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction, Borrower shall deposit with Beneficiary funds which, together with the Proceeds, are in Beneficiary's sole opinion sufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction; and

v.  There will, in the reasonable judgment of Beneficiary, remain sufficient time to complete the restoration or repair of the Improvements and Equipment prior to the Date of Maturity (as defined in the Note).

Any Proceeds remaining after reimbursement of Borrower for its costs of restoring the Improvements and Equipment, at Beneficiary's option, may be applied to partial prepayment of the Indebtedness. Any such application of the Proceeds to the payment of the Indebtedness shall be without prepayment premium or penalty, if any, otherwise applicable and shall not extend or postpone the due dates of the monthly installments under the Note or change the amount of such installments. Any remaining proceeds not applied to the Indebtedness shall be paid to Borrower.

4.  Payment of Impositions.  Subject to the payments in the manner provided in paragraph 5 hereof and to paragraph 8 relating to contests, Borrower shall pay and satisfy when due all real estate and personal property taxes and other taxes and assessments, water and sewer rates and charges, and all other governmental or quasi-governmental charges and any interest or costs or penalties with respect to those charges, assessments, or taxes, ground rent and charges for any easement or agreement maintained for the benefit of the Trust Property, general and special, ordinary and extraordinary, foreseen or unforeseen, of any kind that at any time prior to or after the execution of the Loan Documents may be assessed, levied, imposed, or become a lien on the Trust Property or the rent or income received from the Trust Property, or any use or occupancy of the Trust Property; and any charges, expenses, payments, claims or assessments of any nature, if any, that are or may become a lien on the Trust Property or the rent or income received from the Trust Property (the "Impositions"). Borrower will deliver to Beneficiary, upon request, evidence satisfactory to Beneficiary that the Impositions are not delinquent. Borrower shall not permit and shall promptly cause to be discharged any lien or charge which becomes a lien or charge against the Trust Property, and shall promptly pay for all utility services provided to the Trust Property.

Borrower agrees that in the event of the passage after the date of this Deed of Trust of any law imposing a tax either directly or indirectly, on this Deed of Trust or the Note, the whole sum secured by this Deed of Trust with interest thereon, at the option of Beneficiary, shall immediately become due and payable.

5.  Establishment of Impound Account.  At the option of the Beneficiary, Beneficiary may require Borrower to establish an Impound Account (defined below) in an amount sufficient to pay all Impositions and all insurance premiums for all Policies (the "Insurance Premiums") pursuant to this Deed of Trust. Initial deposits of Impositions and Insurance Premiums shall be made by Borrower to Beneficiary in amounts determined by Beneficiary in its sole discretion on the date hereof to be held by Beneficiary or its agent, in escrow. Additionally, Borrower shall pay to Beneficiary on the first day of each calendar month periodic Impound Account payments equaling one-twelfth of an amount which would be sufficient to pay the Impositions and Insurance Premiums upon the due dates for them (the initial deposits and the amounts referred to in the previous sentence shall be called the "Impound Account"). Borrower agrees to notify Beneficiary immediately of any changes to the amounts, schedules and instructions for payment of any Impositions and Insurance Premiums and authorizes Beneficiary or its agent to obtain the bills for Impositions directly from the appropriate tax or insurance authority.

In addition, if Borrower fails to pay during the term of the Note any taxes or governmental claims as required under Paragraph 4 above, or fails to maintain insurance policies and pay insurance premiums therefore as required under Paragraph 3 above, Beneficiary, at its option, may require that an Impound Account be established with

Non-Order Search
Doc: CALOSA:2019 00141801                    Page 10 of 38                    Requested By: sbanks, Printed: 2/22/2019 9:08 AM

Beneficiary in an amount determined by Beneficiary for the purpose of paying such items.

The periodic Impound Account payments and the payments of interest or principal or both due under the Note shall be added and paid together by Borrower. Provided there are sufficient amounts in the Impound Account and no Event of Default exists, Beneficiary shall pay the Impositions and Insurance Premiums when due with funds from the Impound Account. If the Impound Account is insufficient to pay the items set forth above, Borrower shall pay, upon demand, to Beneficiary, any shortage. Unless otherwise required by applicable law, no earnings or interest on the Impound Account shall be payable to Borrower.

6. <u>Liens.</u> Subject to paragraph 8 hereof relating to contests, the Borrower shall not create or permit any lien, encumbrance or charge on the Trust Property inferior to the lien of this Deed of Trust. Borrower shall pay, when due, the claims of: (a) all persons supplying labor or materials to or in connection with the Trust Property; and (b) registered or certified surveyors or engineers, or licensed architects, or their professional consultants supplying professional services in connection with the Trust Property.

7. <u>Compliance with Laws.</u> Subject to paragraph 8 relating to contests, Borrower shall comply with all present and future statutes, laws, rules, orders, regulations and ordinances affecting the Trust Property, any part thereof or the use thereof and shall comply with all covenants, conditions and restrictions applicable to the Borrower which are contained in any documents constituting a Permitted Encumbrance.

8. <u>Permitted Contests.</u> Borrower shall not be required to (a) pay any tax, assessment or other charge referred to in paragraph 4, (b) discharge or remove any lien, encumbrance or charge referred to in paragraph 6, or (c) comply with any statute, law, rule, regulation or ordinance referred to in paragraph 7, if Borrower (i) contests, in good faith, the existence, the amount or the validity of the item, and (ii) shall give such security to Beneficiary as may be reasonably demanded by Beneficiary to ensure compliance with the foregoing provisions of this paragraph. Borrower shall give prompt written notice to Beneficiary of the commencement of any contest referred to in this paragraph.

9. <u>Condemnation.</u>

a.       Immediately upon receipt by Borrower of notice of the institution of any proceeding or negotiations for condemnation or other eminent domain proceeding (a "Taking"), Borrower shall give notice thereof to Trustee and Beneficiary. Trustee and Beneficiary may appear in any such proceedings and participate in any such negotiations and may be represented by counsel. Borrower, notwithstanding that Trustee and Beneficiary may not be a party to any such proceeding, will promptly give to Trustee and Beneficiary copies of all notices, pleadings, judgments, determinations and other papers received by Borrower therein. Borrower will not enter into any agreement permitting or consenting to the taking of the Trust Property, or any part thereof, or providing for the conveyance thereof in lieu of condemnation unless Beneficiary has first consented thereto in writing, which consent shall not be unreasonably withheld or delayed. All Awards shall be adjusted jointly by Borrower and Beneficiary. All Awards payable as a result of a Taking which exceed $10,000 shall be paid to Beneficiary. Beneficiary may, at its option, apply the proceeds after first deducting its expenses incurred in the collection of them, to the payment of the Indebtedness, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine. Any such application of any award payable as a result of a Taking, to the payment of the Indebtedness, shall be without prepayment premium or penalty.

b.       Subject to the same conditions imposed under the terms of paragraph 3(e) above, relating to the use of Proceeds, Beneficiary shall make all Awards not subject to subparagraph (a) above (after first deducting Beneficiary's expenses to collecting the Award) available for Borrower to reimburse Borrower for its reasonable costs of restoration, repair, replacement or rebuilding of the Improvements. Any excess portion of any Award shall be applied to partial prepayment of the Indebtedness, without prepayment premium or penalty and shall not extend or postpone the due dates of monthly payments.

Initials ____    Initials ____    Initials ____

c.      Borrower hereby unconditionally and irrevocably waives all rights of a property owner under any applicable law providing for the allocation of condemnation proceeds between a property owner and a lien holder.

10. Preservation and Maintenance of Trust Property.

a.      Borrower shall:

i.  keep the Improvements now or hereafter erected on the Premises in safe and good repair and condition, ordinary depreciation excepted;

ii.  upon damage or destruction of the Trust Property or any part thereof by fire or other casualty, restore, repair, replace or rebuild the Trust Property that is damaged or destroyed to the condition it was in immediately prior to such damage or destruction, whether or not any insurance proceeds are available or sufficient for such purpose; provided, however, that if Beneficiary shall apply all the insurance proceeds or any portion thereof to payment of the Indebtedness, Borrower shall have the option, in lieu of completing such repair, replacement, rebuilding or restoration, to pay in full the Note and the entire Indebtedness without payment of a premium or penalty;

iii.  constantly maintain the parking and landscaped areas of the Trust Property;

iv.  not abandon the Improvements or leave the Improvements vacant or deserted, cause, permit or commit waste or permit impairment or deterioration of the Trust Property;

v.  shall not cause or permit any Improvements on the Trust Property to be removed, demolished or structurally altered in any way, nor the construction of additions to existing buildings or additional buildings on the Premises without the prior written consent of Beneficiary, which consent shall not be unreasonably withheld or delayed; As to any permitted construction to be made upon the Premises, all plans and specifications therefore shall be subject to Beneficiary's approval in advance of the commencement of work. Once commenced, all work there under shall be prosecuted with due diligence and in a good and workmanlike manner fully in accordance with the plan and specifications;

vi.  shall not remove from the Premises any of the fixtures and personal property included in the Trust Property unless the same is immediately replaced with property of at least equal value and utility, and this Deed of Trust becomes a valid first lien on such property;

vii.  shall maintain the roofs of the Improvements in safe, sound and good repair and condition;

viii.  not permit any mechanics lien to attach to the Trust Property; and

ix.  comply with all laws and restrictions affecting the Trust Property.

b.      Beneficiary may, at any time and without notice to Borrower, enter, inspect and protect the Trust Property. If Borrower fails to maintain the Trust Property in the manner specified herein, Beneficiary has the right but not the obligation, to undertake such maintenance for the account of Borrower as Beneficiary deems necessary.

11. Encumbrance or Transfer of the Trust Property

a.      Encumbrance. Except for the liens securing the Indebtedness, Borrower will not create or permit to continue in existence any mortgage, pledge, encumbrance, lien, or charge of any kind (including purchase money and conditional sale liens) on any of the Trust Property except for:

Initials \_\_\_\_\_ Initials \_\_\_\_\_ Initials \_\_\_\_\_

Non-Order Search                                       Page 12 of 38                    Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

    i. liens for taxes not yet delinquent, and

    ii. any other liens or charges that are specifically approved in writing by Beneficiary prior to the recordation of this Deed of Trust.

Any transaction in violation of this paragraph 11 will cause all Indebtedness, irrespective of the maturity dates, at the option of the holder and without demand or notice, to immediately become due, together with any prepayment premium in accordance with the terms of the Note.

    b.    <u>Voluntary Assessments</u>. Borrower shall promptly discharge any voluntary assessment including Property Assessed Clean Energy (PACE) and/or HERO loans, ("Voluntary Assessment") that can attain priority over this Security Instrument unless (a) Lender approves the assessment in writing, but only so long as Borrower is performing the voluntary assessment agreement; (b) Borrower contests the Voluntary Assessment in good faith by, or defends against enforcement of the Voluntary Assessment in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the Voluntary Assessment while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the Voluntary Assessment an agreement satisfactory to Lender subordinating the Voluntary Assessment to this Security Instrument. Lender's approval of the Voluntary Assessment is the Lender's sole and absolute discretion, and the Lender may impose additional terms and conditions upon the approval. If Lender determines that any part of the Property is subject to a Voluntary Assessment which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the Voluntary Assessment. Within 10 days of the date on which that notice is given, Borrower shall satisfy the Voluntary Assessment. If Lender requires it, Borrower shall furnish to Lender a copy of the voluntary assessment agreement and receipts evidencing payment of the Voluntary Assessment within such time period as Lender may require. Borrower's obligation to discharge any such Voluntary Assessment, to provide a copy of the voluntary assessment agreement, and receipts of payment of the Voluntary Assessment shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower fails to discharge any such Voluntary Assessment, to provide a copy of the voluntary assessment agreement or receipts of payment of the Voluntary Assessment, Lender may exercise its rights under Section 18 and pay such amount and Borrower shall then be obligated to repay to Lender any such amount.

    c.    <u>Transfer</u>. Borrower acknowledges that Beneficiary has examined both the creditworthiness of Borrower and Borrower's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Borrower's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Borrower's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Indebtedness. Borrower acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Borrower defaults in the repayment of the Indebtedness, Beneficiary can recover the Indebtedness by a sale of the Trust Property. Borrower shall not, without the prior written consent of Beneficiary, assign, transfer or convey the right to manage or control the operation of any part of the Trust Property. A sale, transfer or conveyance within the meaning of this paragraph shall be deemed to include:

    i. an installment sales agreement in which Borrower agrees to sell any part of the Trust Property for a price to be paid in installments;

    ii. an agreement by Borrower leasing all or a substantial part of the Trust Property (except as provided in paragraph 21(d)), or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Borrower's right, title and interest in any Leases or any Rents;

    iii. if Borrower is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Borrower or its corporate general partner to parties who do not now hold a controlling interest;

Initials _____ Initials _____ Initials _____

iv.  if Borrower is a general or limited partnership, joint venture, or other form of partnership (a "Partnership"), a transfer of any general partnership interest or the admission of any new general partner; and

v.  if Borrower is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Borrower or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Borrower or its limited liability company general partner) or the creation or issuance of new memberships in Borrower or its limited liability company general partner to parties so as to reduce the ownership interest of any manager to less than Fifty-One percent (51%) or so as to change the control of the current manager over the company or partnership.

Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Indebtedness immediately due and payable upon Borrower's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

12. Estoppel Certificates. After request by Beneficiary, Borrower, within ten (10) days and at its expense, will furnish the Beneficiary with a statement, duly certified, confirming or otherwise setting forth the original principal amount of the Note, the unpaid principal amount of the Note, the rate of interest on the unpaid principal amount of the Note, the dates installments of interest (or any principal) were last paid, the offsets or defenses to the payment of the Indebtedness, if any, and that the Note and this Deed of Trust are valid, legal and binding obligations and have not been modified or, if modified, giving particulars on such modification.

13. Sale of Trust Property. If this Deed of Trust is foreclosed, the Trust Property, or any interest therein, may at the discretion of Beneficiary be sold in one or more parcels or in several interests or portions and in any order or manner as may be permitted by applicable law.

14. Books and Records. Borrower shall keep adequate books and records of account and furnish Beneficiary with financial statements prepared by a certified public accountant reasonably acceptable to Beneficiary, and other information concerning the affairs of Borrower as Beneficiary may reasonably request, in form and detail reasonably satisfactory to Beneficiary, including, annual statements of income and expense related to the operation of the Trust Property (including a current rent roll, gross rental income, other income, real estate taxes, insurance, operating expenses and depreciation), a copy of Borrower's federal income tax return (including all supporting schedules) within 90 days after the end of each fiscal year, and from time to time, interim financial statements and other information as reasonably requested by Beneficiary within fifteen (15) days after such interim request. All such financial statements, and other information, shall be certified to be true and accurate by an individual responsible for the financial affairs of Borrower, in such individual's individual capacity. Upon Beneficiary's request, Borrower shall furnish Beneficiary with convenient facilities and all books and records necessary for an audit of such financial statements. In the event that such financial statements and other information are not furnished to Beneficiary by Borrower, or, if furnished, are not in a form reasonably acceptable to Beneficiary, Beneficiary may, in addition to any other remedies which Beneficiary has under this Deed of Trust, the Note, or any of the Other Security Documents, audit the books and records of Borrower, and any expense of the audit shall be added to the Indebtedness. Immediately upon the appointment of a receiver of the Trust Property by a court of competent jurisdiction, Borrower shall deliver all books and records or other documents required to be maintained under the terms of this paragraph to such receiver. As used in this paragraph, "Borrower" shall include all Loan Parties.

Non-Order Search
Doc: CALOSA:2019 00141801                    Page 14 of 38                    Requested By: sbanks, Printed: 2/22/2019 9:08 AM

15. <u>Performance of Other Agreements.</u>  Borrower shall observe and perform each and every term to be observed or performed by Borrower pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Trust Property.

16. <u>Events of Default.</u>  Any one or more of the following events shall be an event of default (an "Event of Default") under this Deed of Trust:

a.    Default in the payment of any sum of principal or interest when due under the Note or any other sum due under the Loan Documents, whether by acceleration or otherwise; or

b.    The failure of Borrower to pay any Imposition before it becomes delinquent; or

c.    The failure of Borrower to maintain the Policies in good standing; or

d.    The failure (without cure during the applicable period, if any, for cure) of any Loan Party to observe, perform, or discharge any obligation, term, covenant, or condition of the Loan Documents, any agreement relating to the Trust Property, or any agreement or instrument between any Loan Party and Beneficiary; or

e.    The entry of an order for relief under federal bankruptcy laws as to Borrowers, Loan Party, owner of the Trust property or any person obligated to pay, or guaranteeing payment of, the Indebtedness secured hereby ("Debtors") or the adjudication of Debtors as insolvent or bankrupt pursuant to the provisions of any state insolvency or bankruptcy act; the commencement by Debtors of any case, proceeding, or other action seeking any reorganization, arrangement, composition, adjustment, liquidation, dissolution, or other relief for debtors; Debtor's consent to, acquiescence in, or attempt to secure the appointment of, a receiver of all or any substantial part of its properties or of the Trust Property; Debtor generally not paying its debts as they become due or admitting in writing its inability to pay its debts or making a general assignment for the benefit of creditors; or Debtor's taking of any action to authorize any of the acts set forth above in this paragraph; or

f.    Any case, proceeding, or other action against Debtor is commenced, seeking to have an order for relief entered against it as a debtor or seeking any reorganization, arrangement, composition, adjustment, liquidation, dissolution, or similar relief under any present or future statute, law, or regulation relating to bankruptcy, insolvency, reorganization, or other relief for debtors, or seeking appointment of any receiver for Debtor or for all or any substantial part of its property or for the Trust Property, and that case, proceeding, or other action:

i.    results in the entry of an order for relief against it that is not fully stayed within seven (7) business days, defined as Monday through Friday, exclusive of Federal holidays ("Business Days") after the entry; or

ii.    remains undismissed for an aggregate of thirty (30) days (whether or not consecutive); or the possibility that any portion of the Trust Property would, by operation of law or otherwise, devolve on or pass to any person other than Borrower and that situation continues and is not remedied by Borrower within thirty (30) days after the happening of the event; or

g.    If Borrower fails to proceed and continue with construction on the Trust Property in accordance with the schedules agreed to with Beneficiary or any senior construction lender; or

h.    If Borrower defaults under any other mortgage, deed of trust or security agreement covering any part of the Trust Property whether it be superior or inferior to the lien of this Deed of Trust, and if such default is not cured within any applicable cure or grace period; or

i.    If the Trust Property is subjected (i) to any lien which is superior to the lien of this Deed of Trust, other than a lien for local real estate taxes and assessments not yet delinquent and any Permitted Encumbrances, or (ii) to

219020 Master Docs_SCC_Merge (EP 1 31 19)    13    Initials _____ Initials _____ Initials _____

any mechanic's, materialmen's, construction, or other lien which is superior to the lien of this Deed of Trust and such lien remains undischarged for thirty (30) days; or

> j.    The transfer or encumbrance of the Trust Property in violation of paragraph 11 hereof;

> k.    The occurrence of any Material Adverse Change;

> l.    If Borrower abandons any of the Trust Property;

> m.    If Borrower or any guarantor of any indebtedness secured hereby dies, dissolves, liquidates, or (if corporate Borrower or guarantor) merges with or is consolidated into any other corporation;

> n.    If any statement, representation or warranty in the Loan Documents, any financial statement or any other writing delivered to Beneficiary in connection with the Indebtedness secured hereby is false, misleading or erroneous in any material respect;

> o.    If the holder of any lien or security interest on the Trust Property institutes foreclosure or other proceedings for the enforcement of its remedies there under; or

> p.    If, without the prior written consent of Beneficiary, Borrower grants any easement or dedication, seeks a zoning classification or variance, files any plat, condominium declaration or restrictions or enters into any lease which affects all or substantially all of the Trust Property.

17. <u>Remedies.</u>  If one or more of the Events of Default occurs, the Indebtedness shall include interest on the Indebtedness at the Default Rate as defined in the Note upon any unpaid portion of the Indebtedness and the entire Indebtedness shall become immediately due and payable at the option of the Beneficiary, without further notice or demand;

Beneficiary shall, without regard to the adequacy of the security for the Indebtedness, without notice, be entitled to the appointment of a receiver to take possession of and protect the Trust Property, and operate the same and collect the rents, issues and profits therefrom.

Beneficiary may elect to cause the Trust Property or any part thereof to be sold as provided by law.

Borrower hereby expressly waives any right Borrower may have to direct the order in which any of the Trust Property shall be sold.

In addition, whether or not Beneficiary exercises its option, it may exercise all rights and remedies available to it under the law, including the rights and remedies set forth in **Exhibit C** attached hereto.

No remedy herein conferred upon Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided, but each shall be cumulative.

18. <u>Protection of Security.</u>  If an Event of Default occurs and is continuing, Beneficiary or Trustee, without notice to or demand upon Borrower, and without releasing Borrower from any obligations or defaults may, but is not required to:

> a.    enter on the Trust Property in any manner and to any extent that either deems necessary to protect the security of this Deed of Trust;

> b.    appear in and defend any action or proceeding purporting to affect, in any manner, the Obligations or the Indebtedness, the security of this Deed of Trust, or the rights or powers of Beneficiary or Trustee;

Initials _____ Initials _____ Initials _____

c. pay, purchase, or compromise any encumbrance, charge, or lien that in the judgment of Beneficiary or Trustee is prior or superior to this Deed of Trust; and

d. pay necessary expenses, employ counsel, and pay reasonable attorney fees.

Borrower shall repay on demand all sums expended by Trustee or Beneficiary pursuant to this paragraph with interest at the Default Rate, and those sums, with interest, will be secured by this Deed of Trust.

19. Curing Defaults. If Borrower at any time fails to perform or comply with any of the terms, covenants, and conditions required on Borrower's part to be performed and complied with under this Deed of Trust, the Note, any of the other Loan Documents, or any other agreement that, under the terms of this Deed of Trust, Borrower is required to perform, then Beneficiary, after seven (7) Business Days' notice to Borrower (or without notice if Beneficiary determines that an emergency exists), and without waiving or releasing Borrower from any of the Obligations, may, but shall not be obligated to, and without regard to the adequacy of the security and without prejudice to Beneficiary's right to declare a default hereunder, subject to the provisions of any of the agreements:

a. make from its own funds any payments payable by Borrower including payments to take out, pay for, and maintain any of the insurance policies provided for; and

b. perform any other Obligations on the part of Borrower to be performed and when necessary enter on the Trust Property for that purpose.

The making by Beneficiary of payments out of Beneficiary's own funds will not, however, be deemed to cure the default by Borrower, and they will not be cured unless and until Borrower reimburses Beneficiary for the payments which shall be payable by Borrower to Beneficiary immediately upon demand. All sums paid and all reasonable costs and expenses incurred by Beneficiary in connection with the performance of any act, together with interest on unpaid balances at the Default Rate from the respective dates of Beneficiary's making of each payment, will be added to the principal of the Indebtedness, will be secured by the Other Security Documents and by the lien of this Deed of Trust, prior to any right, title, or interest in or claim on the Trust Property attaching or accruing subsequent to the lien of this Deed of Trust, and will be payable by Borrower to Beneficiary on demand.

20. Non-Waiver. Beneficiary's failure to insist upon strict performance of a term of this Deed of Trust shall not be a waiver of any term of this Deed of Trust. Borrower shall not be relieved of its obligations because:

a. Beneficiary fails to comply with any request of Borrower or any Guarantor to take any action to foreclose this Deed of Trust or otherwise enforce any of its provisions or the provisions of the Note or Other Security Documents;

b. any part of the Trust Property is released or substituted; or

c. Borrower or Beneficiary extend the time of payment or otherwise modify or supplement the terms of the Note, this Deed of Trust or the Other Security Documents. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and shall not constitute a waiver of the right to require prompt payment of the balance of such sum then due or as of any or all other rights and remedies of Beneficiary, including without limitation, the right to proceed with a trustee's sale. Beneficiary may resort to any other security held by Beneficiary in such order and manner as Beneficiary, in its discretion, may elect. The rights of Beneficiary under this Deed of Trust shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Beneficiary shall be construed as an election to proceed under any one provision to the exclusion of other provisions.

21. Assignment of Leases and Rents.

a. Borrower irrevocably assigns to Beneficiary:

i. all of Borrower's right, title, and interest in all leases, licenses, and agreements relating to the management, leasing, rental, or operation of the Trust Property, and other agreements of any kind relating to the use or occupancy of the Trust Property, whether now existing or entered into after the date of this Deed of Trust ("Leases"), and

ii. the rents, issues, and profits of the Trust Property, including, without limitation, all amounts payable and all rights and benefits accruing to Borrower under the Leases ("Payments"), for the purposes and on the terms and conditions below.

This assignment is given to facilitate payment of any and all sums due under the Note, this Deed of Trust and any other agreements securing the Note. Beneficiary is authorized to notify all lessees and tenants of the Trust Property of the existence of this assignment of leases.

The term Leases will also include all guarantees of and security for the lessees' performance, and all amendments, extensions, renewals, or modifications that are permitted. This is a present and absolute assignment, not an assignment for security purposes only, and Beneficiary's right to the Leases and Payments is not contingent on, and may be exercised without, possession of the Trust Property.

b. Beneficiary confers on Borrower a license ("License") to collect and retain the Payments as they become due until the occurrence of an Event of Default. Upon an Event of Default, the License will be automatically revoked and Beneficiary may collect and retain the Payments without notice and without taking possession of the Trust Property. Borrower irrevocably authorizes and directs the lessees under the Leases to rely on and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any rental or other sums that may at any time become due under the Leases, or for the performance of any of the lessees' undertakings under the Leases. The lessees will have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing. Borrower relieves the lessees from any liability to Borrower by reason of relying on and complying with any notice or demand by Beneficiary.

c. Beneficiary, in its sole discretion, may apply, or require the application of, all amounts received pursuant to the assignment to the payment of any one or more of the Obligations in any order that Beneficiary may elect.

d. All Major Tenant Leases (as defined below) entered into subsequent to the date hereof shall be approved, in writing, by Beneficiary. Upon request, Borrower shall furnish Beneficiary with executed copies of all Leases. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates (taking into account reasonable free-rent periods or other promotional discounts consistent with local market conditions) and shall be arm's length transactions. All Leases shall provide that they are subordinate to this Deed of Trust, and that the lessee attorns to Beneficiary, provided Beneficiary and the lessee execute a customary subordination, non-disturbance and attornment agreement. Borrower shall not, without the consent of Beneficiary, cancel, amend, modify or accept the surrender of any Major Tenant Lease or accept prepayments of installments of Rent under any Lease for a period of more than one (1) month in advance or further assign the whole or any part of the Leases or the Rents. Borrower shall perform each provision of every Lease. All security and other deposits received by Borrower under any Lease shall be maintained in a separate account at a bank, and shall not be commingled with Borrower's other funds. If an Event of Default occurs, Beneficiary, at its option, may require Borrower to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair rental value for the portion of the Trust Property possessed by Borrower and may require Borrower to surrender possession of the Trust Property to Beneficiary or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise. For purposes of this paragraph, a "Major Tenant Lease" shall mean any Lease under which the tenant occupies at least 5,000 square feet of the Premises, or which is for a term of at least 10 years, or which represents at least Twenty-Five percent (25%) of the sum total of the Rent under all Leases of the Trust Property.

Non-Order Search                          Page 18 of 38                Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

22. Assignment of Agreements.

a.        As partial security for the Loan, Borrower sells, assigns, transfers, sets over, and delivers to Beneficiary all of Borrower's right, title, and interest in all agreements, permits, and contracts pertaining to the use or operation of the Trust Property, including, but not limited to, environmental impact reports; negative declarations; map approvals; grading and construction permits; conditional use permits; applications for all permits; management agreements; all development rights in the Trust Property that Borrower may now or later acquire (including, without limitation, development rights arising in connection with any action by a governmental entity, including, by way of illustration, but not of limitation, inducement resolutions of county, municipal, or other governmental entities); agreements with contractors, suppliers, and construction managers; and agreements pertaining to the transfer of development rights or permitted floor area under applicable laws or ordinances (collectively, "Agreements"), as they may be amended or otherwise modified from time to time, including, without limitation, the right of Borrower to terminate any of the Agreements, to perform under them, and to compel performance and otherwise exercise all remedies under them, together with the immediate and continuing right to collect and receive all sums that may become due to Borrower, or which Borrower may now or later become entitled to demand or claim, arising or issuing out of the Agreements, including, without limitation, claims of Borrower for damages arising out of breach of or default under any of the Agreements and all rights of Borrower to receive proceeds of any insurance, indemnity, warranty, or guaranty with respect to any of the Agreements. However, so long as no Event of Default has occurred and is continuing, Borrower will have the right under a license granted to collect and retain all sums that may become payable to Borrower under the Agreements.

b.        Borrower covenants and agrees to punctually observe, perform, and discharge the obligations, terms, covenants, conditions, and warranties to be observed, performed, and discharged by it under the Agreements. Beneficiary, upon an Event of Default, at its option and upon written notice to Borrower, will have the right to declare the assignment in this Section 22 to be absolute, and, in addition, Beneficiary will have the complete right then or later to exercise and enforce all of the rights and remedies provided by law.

c.        The acceptance by Beneficiary of this assignment, with all the rights, powers, privileges, and authority granted will not, prior to the exercise of Beneficiary's right to declare this assignment to be absolute, obligate Beneficiary to assume any obligations under the Agreements or to take any action under them, or to expend any money or incur any expense or perform or discharge any obligation, duty, or liability under the Agreements, or to assume any obligation or responsibility for the nonperformance of the provisions by Borrower.

23. Liability. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.

24. Security Agreement. This Deed of Trust is both a real property Deed of Trust and a "security agreement" within the meaning of the Uniform Commercial Code. The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Trust Property. BORROWER HEREBY GRANTS TO BENEFICIARY, AS SECURITY FOR THE DEBT, A SECURITY INTEREST IN THE TRUST PROPERTY TO THE FULL EXTENT THAT THE TRUST PROPERTY MAY BE SUBJECT TO THE UNIFORM COMMERCIAL CODE OF ANY STATE OR STATES WHERE THE TRUST PROPERTY IS SITUATED (said portion of the Trust Property so subject to a Commercial Code being called in this paragraph the "Collateral"). If an Event of Default occurs, Beneficiary shall have and may exercise immediately and without demand, all rights and remedies granted to a secured party upon default under the applicable Uniform Commercial Code, including, the right to take possession of the Collateral, and to take such other measures as Beneficiary may deem reasonably necessary or advisable for the care, protection and preservation of the Collateral. Borrower shall pay to Beneficiary on demand any expenses, including attorneys' fees and expenses, incurred by Beneficiary in protecting its interest in the Collateral and in enforcing its rights to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary as to the Collateral sent to Borrower at least ten (10) days prior to such action, shall constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral

Non-Order Search                                    Page 19 of 38                    Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

may be applied by Beneficiary to the payment of the Indebtedness in the priority and proportions as Beneficiary in its discretion shall deem proper.

25. <u>Fixture Filing.</u> From the date of its recording, this Deed of Trust shall be effective as a financing statement filed as a fixture filing to the extent set forth in **Exhibit A** hereto.

26. <u>Successor Trustee.</u> The Trustee may be removed at any time with or without cause by an instrument in writing executed by the Beneficiary, or if there is more than one Beneficiary, by their designated agent. In case of the death, resignation, removal or disqualification of the Trustee, then the Beneficiary shall have the right and hereby is authorized and empowered to appoint a successor trustee, or a substitute trustee in any manner now or hereafter provided by law, without formality other than appointment and designation in writing executed by the Beneficiary. The authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Indebtedness finally has been paid in full or until the Trust Property is sold. All references herein to the Trustee shall refer to the Trustee from time to time acting hereunder.

27. <u>Indemnification.</u> Borrower shall protect, indemnify and save harmless Trustee and Beneficiary from all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses) imposed upon or incurred by or asserted against Trustee or Beneficiary because of:

     a.     fraud or material misrepresentation by or on behalf of the Borrower;

     b.     inaccuracy, incompleteness or breach of any representation, warranty or covenant contained in paragraph 2 of this Deed of Trust;

     c.     any failure on the part of Borrower to perform or comply with any of the terms of this Deed of Trust or the other security documents;

     d.     ownership of the Trust Property or any interest in it or the receipt of any rents;

     e.     any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Trust Property;

     f.     any use, nonuse or condition in, on or about the Trust Property or any part thereof; or

     g.     performance of any labor or services or the furnishing of any materials or other property to the Trust Property, whether or not caused in whole or in part by the negligent acts or omissions of the Beneficiary or individuals or entities acting as the agents or employees of Beneficiary.

However, such indemnity shall not apply to matters caused by or arising out of the gross negligence or willful misconduct of Trustee or Beneficiary, or any of its agents, or as to liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses based solely on facts or circumstances occurring only subsequent to such time, if any, that Beneficiary becomes the owner of the Trust Property by way of foreclosure of the lien of this Deed of Trust, deed in lieu of such foreclosure, or otherwise. Any amount payable to Trustee or Beneficiary because of the application of this paragraph 27 shall become immediately due and payable upon demand by Beneficiary, and shall bear Interest at the Default Rate, as stated and defined in the Note, from the date of such demand. The obligations of Borrower under this paragraph shall survive any termination or satisfaction of this Deed of Trust.

28. <u>Environmental Provisions.</u>

     a.     <u>Definitions:</u>

Initials _____ Initials _____ Initials _____

Non-Order Search
Doc: CALOSA:2019 00141801

Requested By: sbanks, Printed: 2/22/2019 9:08 AM

      i. *Hazardous Substance.* Any oil, flammable substance, explosive, radioactive material, toxic material, effluents, contaminants, chemical known to cause cancer or reproductive toxicity, emissions or , hazardous waste or substance, toxic waste or substance, or any other waste, chemical, material, or pollutant that:

     1.     poses a hazard to the Trust Property or to persons on the Trust Property, or

     2.     causes the Trust Property to be in violation of any Hazardous Substance Law;

     3.     the handling, storage, release, transportation, or disposal of which is prohibited or becomes prohibited, limited or regulated by any federal, state, county, regional or local authority or which, even if not so regulated, is or becomes known to pose a hazard to the health and safety of the occupants of the Trust Property including, without limitation,

     a.   asbestos in any form;

     b.   petroleum and petroleum by-products;

     c.   urea formaldehyde foam insulation;

     d.   transformers or other equipment that contain dielectric fluid containing levels of polychlorinated biphenyls;

     e.   radon gas;

     f.   any chemical, material, or substance now or hereafter defined as or included in the definition of "hazardous substance," "hazardous substances," "hazardous wastes," "hazardous materials," "extremely hazardous waste," "restricted hazardous waste," or "toxic substances" or words of similar import under any applicable local, state, or federal law, including in Section 25117 of the California Health & Safety Code and the Safe Drinking Water and Toxic Enforcement Act of 1986, or under the regulations adopted or publications promulgated pursuant to those laws whether presently in effect or which may be promulgated in the future, as such laws, regulations and publications may be amended from time to time.

     g.   any other chemical, material, or substance, exposure to which is prohibited, limited, or regulated by any governmental authority or which may pose a hazard to the health and safety of the occupants of the Trust Property or the owners or occupants of property adjacent to or surrounding the Trust Property. or any other person coming on the Trust Property or any adjacent property; and

     h.   any other chemical, material, or substance that may pose a hazard to the environment.

      ii. *Hazardous Substance Claim:*  Any enforcement, cleanup, removal, remedial, or other governmental, regulatory, or private actions, agreements, writs, injunctions, decree judgment or orders threatened, instituted, or completed pursuant to any Hazardous Substance Law, together with all claims, law suits, proceeding or investigation pending, made or threatened by any third party against Borrower or the Trust Property relating to damage, contribution, cost-recovery compensation, loss, or injury resulting from the presence, release, or discharge of any Hazardous Substance regardless of whether there is any basis for the commencement or filing of any such claim, lawsuit, proceeding or investigation.

      iii. *Hazardous Substance Law:*  Any federal, state, or local law, ordinance, regulation, or policy relating to the environment, health, and safety, any Hazardous Substance (including, without limitation, the use, handling, transportation, production, disposal, discharge, release or storage of the substance), industrial hygiene, soil, groundwater, and indoor and ambient air conditions or the environmental conditions on the Trust Property,

Initials _____ Initials _____ Initials _____

including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA")[42 U.S.C. §9601, et seq.], as amended by the Superfund Amendments and Reauthorization Act ("SARA"), the Clean Air Act [42 U.S.C. 7401, et seq.] and as amended from time to time; the Hazardous Materials Transportation Act [49 U.S.C. §1801 et seq.], as amended from time to time; the Resource, Conservation and Recovery Act [42 U.S.C. §6901 et seq.], as amended from time to time; the Federal Water Pollution Control Act [33 U.S.C. §1251 et seq.], as amended from time to time; and any state law relating to or regulating Hazardous Substances.

iv. *Release:* Any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment, including continuing migration, of Hazardous Substances that goes into the soil, surface water, or groundwater of the Trust Property, whether or not caused by, contributed to, permitted by, acquiesced to, or known to Borrower.

b.      Representations and Warranties.  Except as disclosed in writing to, and acknowledged in writing by, Beneficiary, Borrower, and each person executing this Deed of Trust on behalf of Borrower jointly and severally represents and warrants that:

i. during the period of Borrower's ownership of the Trust Property

1.      there has been no use, generation, manufacture, storage, treatment, disposal, discharge, processing or other handling, Release, or threatened Release of any Hazardous Substance by any person on or around the Trust Property; and

2.      there have been no Hazardous Substances transported over or through the Trust Property;

ii. after diligent inquiry, Borrower has no knowledge of, or reason to believe that, there has been:

1.      any use, generation, manufacture, storage, treatment, disposal, Release, or threatened Release of any hazardous waste or substance by any prior owners or prior occupants of the Trust Property or by any third parties onto the Trust Property; or

2.      any actual or threatened litigation or claims of any kind by any person relating to these matters;

3.      no Hazardous Substances in excess of permitted levels or reportable quantities under applicable Hazardous Substance Laws are present in or about the Trust Property or any nearby real property that could migrate to the Trust Property;

iii. no Hazardous Substances in excess of permitted levels or reportable quantities under applicable Hazardous Substance Laws are present in or about the Trust Property or any nearby real property that could migrate to the Trust Property;

iv. no Release or threatened Release exists or has occurred, no Hazardous Substance has been deposited, discharged, placed or disposed of at, on or near the Trust Property, nor has the Trust Property been used at any time by any person as a landfill or waste disposal site;

v. no underground storage tanks of any kind are or ever have been located in or about the Trust Property;

vi. the Trust Property and all operations and activities at, and the use and occupancy of, the Trust Property, comply with all applicable Hazardous Substance Laws;

Initials ___ Initials ___ Initials ___

Non-Order Search
Doc: CALOSA:2019 00141801

Page 22 of 38

Requested By: sbanks, Printed: 2/22/2019 9:08 AM

vii.   Borrower and every user of the Trust Property ("User") has, and is now in strict compliance with, every permit, license, and approval required by all applicable Hazardous Substance Laws for all activities and operations at, and the use and occupancy of, the Trust Property;

viii.   to the best of Borrower's knowledge, after diligent inquiry, there are no Hazardous Substance Claims pending or threatened with regard to Trust Property or against Borrower or any Guarantor;

ix.   any written disclosure submitted by or on behalf of Borrower to Beneficiary concerning any Release or threatened Release, past or present compliance by Borrower, or any User or other person with any Hazardous Substance Laws applicable to the Trust Property, the past and present use and occupancy of the Trust Property, and any environmental concerns relating to the Trust Property, was true and complete when submitted and continues to be true and complete as of the date of this Deed of Trust.

c.   **Covenants.** Borrower covenants and agrees, except in the ordinary course of business and in strict compliance with all applicable Hazardous Substance Laws, as follows:

i.   not to cause or permit the Trust Property to be used as a site for the use, generation, manufacture, storage, holding, handling, treatment, Release, discharge, disposal, abatement, removal, transportation, or presence of any Hazardous Substance;

ii.   not to cause, contribute to, permit, or acquiesce in any Release or threatened Release;

iii.   not to change or modify the use of the Trust Property without the prior written consent of Beneficiary;

iv.   to comply with and to cause the Trust Property and every User of the Trust Property to comply with all Hazardous Substance Laws, judgments, orders, permits, licenses, rules, agreements, covenants, restrictions, requirements or the like existing now or enacted in the future relating to or governing in any way the environmental condition of the Trust Property or the presence of Hazardous Substance on, in under or affecting all or any portion of the Trust Property and to properly complete, obtain, submit or file any and all notices, permits, licenses, authorizations, covenants and the like relative to any environmental matters described in this Deed of Trust in connection with the Trust Property or the ownership, use, operation or enjoyment of the Trust Property;

v.   to immediately notify Beneficiary in writing and to provide Beneficiary with a reasonably detailed description of:

1.   any noncompliance of the Trust Property with any Hazardous Substance Laws;

2.   any Hazardous Substance Claim;

3.   any Release or threatened Release;

4.   the discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Trust Property that would cause the Trust Property or any part of it to be designated as hazardous waste property;

vi.   in the event that Borrower discovers a Release or the presence of any Hazardous Substance on or about the Trust Property in violation of any Hazardous Substance Law, to:

1.   notify Beneficiary of that discovery together with a reasonably detailed description;

219020 Master Docs_SCC_Merge (EP 1 31 19)                21                Initials _____ Initials _____ Initials _____

2.      promptly after a request by Beneficiary, engage a qualified environmental engineer reasonably satisfactory to Beneficiary to investigate these matters and prepare and submit to Beneficiary a written report containing the findings and conclusions resulting from that investigation, all at the sole expense of Borrower; and

3.      take, at Borrower's sole expense, all necessary actions to contain, remedy, repair, clean up, transport, dispose or detoxify any Release or Hazardous Substance, including, but not limited to, any remedial action required by any Hazardous Substance Laws or any judgment, consent, decree, settlement, or compromise in respect of any Hazardous Substance Claims with regard to all or any portion of the Trust property or any other property adjacent or proximate to the Trust Property if such Hazardous Substances originated on or from the Trust Property. These actions include the implementation and enforcement of any monitoring, notification or other precautionary measures which may at any time become necessary to protect against the release or discharge of Hazardous Substances on, in, under or affecting all or any portion of the trust Property or into the air, any body of water, any other public domain or any property adjacent or proximate to the Trust Property. These actions are to be performed in accordance with Hazardous Substance Laws; and in a good and proper manner; and under the supervision of a qualified environmental engineer approved in writing by Beneficiary; and in accordance with plans and specifications for these actions approved in writing by Beneficiary; and using licensed and insured qualified contractors approved in writing by Beneficiary;

vii.  immediately furnish to Beneficiary copies of all written communications received by Borrower from any governmental authority or other person or given by Borrower to any person and any other information Beneficiary may reasonably request concerning any Release, threatened Release, Hazardous Substance Claim, or the discovery of any Hazardous Substance on or about the Trust Property in violation of any Hazardous Substance Law; and

viii.  keep Beneficiary generally informed regarding any Release, threatened Release, Hazardous Substance Claim, or the discovery of any Hazardous Substance on or about the Trust Property in violation of any Hazardous Substance Law.

d.      <u>Inspection and Receivership Rights</u>.  Upon Beneficiary's reasonable belief of the existence of a past or present Release or threatened Release not previously disclosed by Borrower in connection with the making of the Loan or the execution of this Deed of Trust or upon Beneficiary's reasonable belief that Borrower has failed to comply with any environmental provision of this Deed of Trust or any other Loan Document and upon reasonable prior notice (except in the case of an emergency) to Borrower, Beneficiary or its representatives, employees, and agents, may from time to time and at all reasonable times (or at any time in the case of an emergency) enter and inspect the Trust Property and every part of it (including all samples of building materials, soil, and groundwater, and all books, records, and files of Borrower relating to the Trust Property) and perform those acts and things that Beneficiary deems necessary or desirable to inspect, investigate, assess, and protect the security of this Deed of Trust, for the purpose of determining:

i.  the existence, location, nature, and magnitude of any past or present Release or threatened Release;

ii.  the presence of any Hazardous Substances on or about the Trust Property in violation of any Hazardous Substance Law; and

iii.  the compliance by Borrower of every environmental provision of this Deed of Trust and every other Loan Document.  In furtherance of the purposes above, without limitation of any of its other rights, Beneficiary may:

1.      obtain a court order to enforce Beneficiary's right to enter and inspect the Trust Property, to which the decision of Beneficiary as to whether there exists a Release, a threatened Release, any Hazardous

Initials _____ Initials _____ Initials _____

Substances on or about the Trust Property in violation of any Hazardous Substance Law, or a breach by Borrower of any environmental provision of this Deed of Trust or any other Loan Document, will be deemed reasonable and conclusive as between the parties; and

        2.    have a receiver appointed to enforce Beneficiary's right to enter and inspect the Trust Property for the purpose set forth above.

        All costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations that Beneficiary or its agents, representatives, or employees may conduct, including the fees of the engineers, laboratories, contractors, consultants, and attorneys, will be paid by Borrower. All costs or expenses incurred by Trustee and Beneficiary pursuant to this subparagraph (including without limitation court costs, consultant's fees, and attorney fees, whether incurred in litigation and whether before or after judgment) will bear interest at the Default Rate from the date they are incurred until those sums have been paid in full. Except as provided by law, any inspections or tests made by Beneficiary or its representatives, employees, and agents will be for Beneficiary's purposes only and will not be construed to create any responsibility or liability on the part of Beneficiary to Borrower or to any other person. Beneficiary will have the right, but not the obligation, to communicate with any governmental authority regarding any fact or reasonable belief of Beneficiary that constitutes or could constitute a breach of any of Borrower's obligations under any environmental provision contained in this Deed of Trust or any Loan Document.

    e.    <u>Release and Indemnity</u>. Borrower:

        i.   releases and waives any future claims against Beneficiary for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any Hazardous Substance Laws or under any Hazardous Substance Claim;

        ii.   agrees to reimburse Beneficiary, on demand, for all costs and expenses incurred by Beneficiary in connection with any review, approval, consent, or inspection relating to the environmental provisions in this Deed of Trust together with interest, after demand, at the Default Rate; and

        iii.   agrees to indemnify, defend (with counsel of Beneficiary's choice), protect and hold harmless Beneficiary and Trustee, including any party to whom Beneficiary assigns the Loan, and their respective affiliates, shareholders, trustees, directors, officers, partners, principals, agents, attorneys and employees (collectively the "Indemnitees") from all losses, costs, claims, damages, penalties, liabilities, actions and causes of action, judgments, suits, proceedings, court costs, demands, obligations, fines, disbursements, attorney fees and other legal expenses, costs of evidence of title, cost of evidence of value, and other expenses of any kind or of any nature whatsoever (collectively, "Expenses"), which may at any time be imposed upon, incurred, suffered by or asserted or awarded against Indemnitees including, but not limited to, any Expenses incurred or accruing after the foreclosure of the lien of this Deed of Trust, which either may suffer or incur and which directly or indirectly arises out of or is in any way connected with the breach of any environmental provision either in this Deed of Trust or in any Loan Document or as a consequence of any past, present or future Release or threatened Release on the presence, use, generation, manufacture, storage, disposal, transportation, Release, or threatened Release of any Hazardous Substance on, in, under about or affecting the Trust Property or any portion of the Trust Property, or affecting all or any portion of any property adjacent or proximate to the Trust Property if such Hazardous Substance originated on or from the Trust Property or any portion of the Trust Property, including the soils and groundwaters, caused or permitted by Borrower, any prior owner or operator of the Trust Property, any adjoining landowner or any other party, including, without limitation, the cost of any required or necessary containment, repair, cleanup, remedy, transportation, disposal or detoxification of any Hazardous Substance and the preparation of any closure, remedial action, or other required plans, whether that action is required or necessary by reason of acts or omissions occurring prior to or following the recordation of this Deed of Trust. Borrower's obligations will survive the satisfaction, release, or cancellation of the Indebtedness, the release and reconveyance or partial release and reconveyance of this Deed of Trust, and the foreclosure of the lien of this Deed of Trust or deed in lieu of the Deed of Trust.

f.       Request for Information. Borrower and Beneficiary agree as set forth in **Exhibit C** hereto.

g.       Effect of Site Assessment. Even though Borrower may have provided Beneficiary with an environmental site assessment or other environmental report together with other relevant information regarding the environmental condition of the Trust Property, Borrower acknowledges and agrees that Beneficiary is not accepting the Trust Property as security for the Loan based on that assessment, report, or information. Rather Beneficiary has relied on the representations, warranties, covenants, agreements and indemnifications of Borrower in this Deed of Trust, and Beneficiary is not waiving any of its rights and remedies in the environmental provisions of this Deed of Trust or any other Loan Document.

h.       Remedy for Violation of Environmental Obligations. If Borrower fails fully to perform the covenant and obligations, or breaches the warranties contained in this Section 28, in addition to all other remedies which Beneficiary may have, and notwithstanding any provision to the contrary contained in the loan Documents or any other document, all indebtedness secured by this Deed of Trust shall become a recourse obligation.

29.      Dispute Resolution.

a.       Arbitration of Disputes. Any dispute arising out of, or relating to, this Deed of Trust, the Note or the other Loan Documents, or the breach, termination, enforcement, interpretation or validity thereof, including the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Orange County, California, before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures, a copy of which the parties acknowledge receiving at the time of executing this Agreement. At the conclusion of the arbitration, the arbitrator shall enter an arbitrator's award (the "Arbitration Award"). Judgment on the Arbitration Award may be entered in any court having jurisdiction. If the amount in controversy exceeds $100,000, any party can appeal the award to a three-arbitrator panel administered by JAMS which shall reconsider de novo any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. The costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, including preliminary injunctive relief to preserve the status quo or prevent irreparable injury. The parties agree not to defend against any application for provisional relief on the ground that an arbitration is pending.

b.       Allocation of Fees and Costs. The arbitrator may, in the Arbitration Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.

c.       Alternative Arbitration Agency. In the event JAMS ceases to exist, or at the written stipulation of the parties, the above mediation and arbitration shall be conducted by, and pursuant to the rules of, the American Arbitration Association, or such other alternative dispute resolution association as the parties may mutually agree.

d.       Federal Arbitration Act. This Dispute Resolution provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1 et seq. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law.

e.       This Paragraph 29 does not apply to equitable remedies or Beneficiary's exercise of its right to foreclose in the event of Borrower's default as otherwise provided for herein or at law.

30. Authority. Borrower has full power, authority and legal right to execute this Deed of Trust, and to create the security interest in the Trust Property contained in this Deed of Trust and to keep and observe all of the terms of this Deed of Trust.

Initials _____ Initials _____ Initials

31. Inapplicable Provisions. Whenever possible, each provision of this Deed of Trust shall be interpreted as effective and valid under applicable law, but if any provision of this Deed of Trust is prohibited or invalid, it shall be ineffective to the extent necessary to make the remaining provisions valid.

32. Duplicate Originals. This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be one and the same instrument.

33. Certain Definitions. Words used in this Deed of Trust in singular or plural form shall include the other, and the word "Borrower" shall mean "each Borrower or any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word "Trustee" shall mean "Trustee and any successor trustee appointed by Beneficiary according to law," the word "Beneficiary" shall mean "Beneficiary or any subsequent holder of the Note or any part thereof or any of the Indebtedness," and the word "Note" shall mean "the Note or any other evidence of indebtedness secured by this Deed of Trust," the word "person" shall mean an individual, partnership, corporation, limited liability company, trust, unincorporated association, or other entity or association, the word "Trust Property" shall include any portion of the Trust Property or interest in it; the term "attorneys fees" shall include reasonable fees attributable to in-house counsel. Whenever the context may require, any pronouns used shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

34. No Oral Change. This Deed of Trust may not be modified, amended, changed, discharged, waived or terminated orally, but only by a writing signed by the person against whom the enforcement of the modification, amendment, change, waiver, discharge or termination is sought.

35. Further Acts, Etc. Borrower will, at its cost, do, execute, acknowledge and deliver all other acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Beneficiary shall require for to facilitate the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust and, on demand, will execute and deliver any financing statement, chattel mortgages or comparable security instruments, to evidence more effectively the lien upon the Trust Property.

36. Headings, Etc. The headings and captions of various paragraphs of this Deed of Trust are for convenience of reference only and are not to be considered as affecting the contents of the paragraphs.

37. Filing of Deed of Trust, Etc. Borrower shall pay all filing, registration or recording fees and all attorneys' fees, commissions, and expenses for the preparation, execution and acknowledgment of the Note, this Deed of Trust, and the Other Security Documents.

38. Reconveyance of Trust Property. Upon written request of Beneficiary stating that all sums secured by this Deed of Trust have been paid, and upon surrender of this Deed of Trust and the Note to Trustee for cancellation, and upon payment of its fees the Trustee shall reconvey to the grantee, without warranty, all of the Trust Property to the person or persons legally entitled to such reconveyance.

39. Governing Law. The Note, this Deed of Trust and all Other Security Documents shall be governed by and construed in accordance with the applicable laws of the State of California (without regard to principles of conflicts of law) except to the extent (a) of procedural and substantive matters relating only to the creation, perfection and foreclosure of liens, and enforcement of rights and remedies against the Trust Property, which matters shall be governed by the laws of the State in which such Trust Property is located and (b) that the laws of the United States of America and any rules, regulations or orders issued or promulgated thereunder, applicable to the affairs and transactions entered into by Borrower, otherwise pre-empt California law or the laws of the State in which the Trust Property is located, in which event such Federal law shall control.

40. Duties and Obligations of Trustee. Borrower agrees that:

Non-Order Search                                         Page 27 of 38                          Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

a.       the duties and obligations of Trustee shall be determined solely by the express provisions of this Deed of Trust and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Deed of Trust, and no implied covenants or obligations shall be imposed upon Trustee;

b.       no provision of this Deed of Trust shall require Trustee to expend or risk its own funds, or otherwise incur any financial obligation in the performance of any of its duties, or in the exercise of any of its rights or powers, if it shall have grounds for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured of it;

c.       Trustee may consult with counsel of its own choosing and the advice of such counsel shall be full and complete authorization and protection in the respect of any actions taken by it in good faith and in reliance upon the advice;

d.       Trustee shall not be liable for any action taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Deed of Trust.

41. <u>Notices</u>.  Any notice, demand, statement, request, or consent made under this Deed of Trust shall be in writing and shall be deemed given when hand delivered, or within three (3) days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address of the party to whom such notice is to be given, or to such other address as Borrower, Trustee or Beneficiary, as the case may be, shall in like manner designate in writing.

42. <u>Request for Notice</u>.  Borrower hereby requests that, unless otherwise prescribed by law, a copy of any notice of default or notice of sale pursuant to a nonjudicial foreclosure of this Deed of Trust be delivered to Borrower as set forth in the Notice provision above.

43. <u>Entire Agreement</u>.  This Deed of Trust and the other Loan Documents set forth the entire understanding between Borrower and Beneficiary and they will not be amended except by a written instrument duly executed by each of Borrower and Beneficiary.  Any previous representations, warranties, agreements, and understandings among the parties regarding the subject matter of the Loan or the Loan Documents, whether written or oral, are superseded by this Deed of Trust and the other Loan Documents.

44. <u>Waiver of Rights</u>.  Borrower and Beneficiary agree as set forth in **Exhibit C** hereto.

*[SIGNATURE PAGE TO FOLLOW]*

Initials ___ Initials ___ Initials ___

IN WITNESS WHEREOF, the undersigned has executed and delivered this Deed of Trust, effective as of the date first above written.

BORROWER:
Mark R. Honzel, M.D. as trustee of The Mark R. Honzel, M.D. Trust dated October 21, 2010, Alan Jason Coe, an unmarried man, Andrew W. Spanswick, an unmarried man

_____          2|12|19
Mark Honzel, Trustee                     Date

_____          2.12.19
Alan Jason Coe                           Date

_____          2-12-19
Andrew W. Spanswick                      Date

Initials ___ Initials ___ Initials ___

Non-Order Search                          Page 29 of 38          Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

_____ *[Space Below This Line for Acknowledgment]* _____

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California ) ss.
County of *Los Angeles* )

On *FEBRUARY 12, 2019* before me, *Sergio Velasco, Notary Public* personally appeared, *MARK HONZEL* who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SERGIO VELASCO
COMM. #2255592
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Aug. 24, 2022

NOTARY SIGNATURE

State of California ) ss.
County of *Los Angeles* )

On *FEBRUARY 12, 2019* before me, *Sergio Velasco, Notary Public* personally appeared, *ALAN JASON DOE* who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SERGIO VELASCO
COMM. #2255592
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Aug. 24, 2022

NOTARY SIGNATURE

Initials _____ Initials _____ Initials _____

219020 Master Docs_SCC_Merge (EP 1 31 19)    28

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Los Angeles _____ )

On _FEBRUARY 12, 2019_ before me, _____ Sergio Velasco, Notary Public _____

(insert name and title of the officer)

personally appeared _____ ALAN JASON COE _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

SERGIO VELASCO
COMM. #2255592
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Aug. 24, 2022

_____ _/Space Below This Line for Acknowledgment/_ _____

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California         ) ss.
County of _Los Angeles_ )

On _February 12, 2019_ before me _Sergio Velasco, Notary Public_ personally appeared,
_____ _Andrew W. Spanswick_ _____ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

_____
NOTARY SIGNATURE

SERGIO VELASCO
COMM. #2255592
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Aug. 24, 2022

Initials _____ Initials _____ Initials _____

Loan No.: 219020

## EXHIBIT A
Legal Description of Real Property

For APN/Parcel ID(s): 5510-008-007
THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 7 IN BLOCK 24 OF TRACT NO. 7555, INT HE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 88, PAGES 79 THROUGH
84, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

For APN/Parcel ID(s): 2357-007-022
THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 2:

LOT 4 OF TRACT NO. 65306, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1347, PAGES 44 AND 45 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2A:

A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS, VEHICULAR AND PEDESTRIAN ACCESS
AND MAINTENANCE PURPOSES IN, ON, OVER AND ACROSS THE COMMON AREA AS SET FORTH
IN THE DECLARATION OF COVENANT, CONDITIONS AND RESTRICTIONS RECORDED ON MARCH
18, 2009 AS INSTRUMENT NO. 09-384923, OF OFFICIAL RECORDS, ("DECLARATION") AND ANY
AMENDMENTS THERETO AND AS DELINEATED ON THE MAP OF SAID TRACT.

For APN/Parcel ID(s): 5555-006-172
THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE OF WEST HOLLYWOOD,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 3:

A CONDOMINIUM COMPRISED OF:

PARCEL 3A:

THAT PORTION OF LOT 1 OF TRACT NO. 33213, IN THE CITY OF WEST HOLLYWOOD, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 906, PAGES 70
AND 71 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN AND
DEFINED AS UNIT 151 ON THE CONDOMINIUM PLAN RECORDED JANUARY 30, 1979 AS
INSTRUMENT NO. 79-124606, OF OFFICIAL RECORDS OF SAID COUNTY.

Non-Order Search                                      Page 33 of 38                      Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

PARCEL 3B:

AN UNDIVIDED 006002 INTEREST IN AND TO LOT 1 OF SAID TRACT NO. 33213.
EXCEPT THEREFROM THOSE PORTIONS SHOWN AND DEFINED AS UNITS 1 TO 178 INCLUSIVE
ON SAID CONDOMINIUM PLAN.

APN: 5510-008-007, 2357-007-022, 5555-006-172

6431 W. 5th Street Los Angeles, CA 90048
5046 Cofler Lane Valley Village, CA 91607
1155 N. La Cienega Blvd #1114, West Hollywood, CA 90069

Non-Order Search                    Page 34 of 38                    Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

Loan No.: 219020

**EXHIBIT B**
to DEED OF TRUST, SECURITY AGREEMENT,
ASSIGNMENT OF RENTS AND LEASES
AND FIXTURE FILING
(Lender Vesting)

PREAMBLE:
Name (including State of formation, if any) and Mailing Address of Borrower:

Mark R. Honzel, M.D. as trustee of The Mark R. Honzel, M.D. Trust dated October 21, 2010, Alan Jason Coe, an unmarried man, and Andrew W. Spanswick, an unmarried man, at 6431 W. 5th Street, Los Angeles, CA 90048, 5046 Cofler Lane Valley Village, CA 91607, 1155 N. La Cienega Blvd #1114, West Hollywood, CA 90069

BENEFICIARIES:

Michael Moser, Trustee of The One to Four Profit Plan as to an undivided 51.388889 percent interest to Seven hundred forty thousand ($740,000.00); Provident Trust Group FBO Steven G. Stein IRA as to an undivided 10.763889 percent interest to One hundred fifty-five thousand ($155,000.00); Marc B. Pannier and Christy L. Pannier, as Trustees of the Marc & Christy Pannier Family Trust established June 7, 2012 as to an undivided 6.944444 percent interest to One hundred thousand ($100,000.00); Shaya Investments, LLC, a California limited liability company as to an undivided 6.944444 percent interest to One hundred thousand ($100,000.00); IRA Services Trust Company, CFBO of Robert J Accinelli as to an undivided 5.555556 percent interest to Eighty thousand ($80,000.00); Charles D. Burke, Trustee of The Charles D. Burke Trust UTD June 20, 2006 as to an undivided 5.208333 percent interest to Seventy-five thousand ($75,000.00); Lauren Accinelli, Incumbent Trustee of the Lauren Accinelli Living Trust U/D/T dtd November 12, 2010. as to an undivided 3.472222 percent interest to Fifty thousand ($50,000.00); Roger Burke, a married man as his sole and separate property as to an undivided 3.472222 percent interest to Fifty thousand ($50,000.00); Ellen Jasnosz, Trustee of the Ellen Jasnosz 2002 Trust Dated 5/17/02 as to an undivided 2.777778 percent interest to Fourty thousand ($40,000.00); Mark Steven Melanson and Merri Gwen Melanson, Trustees of the Melanson Family Trust dated May 28, 2003 as to an undivided 1.736112 percent interest to Twenty-five thousand ($25,000.00); Jonathan Posell, a married man as his sole and separate property as to an undivided 1.736111 percent interest to Twenty-five thousand ($25,000.00)

All held at:
So-Cal Capital, Inc.,
as Designated Agent for Beneficiary(s) at
20280 SW Acacia Street, Suite 115,
Newport Beach, CA 92660

DESCRIPTION OF NOTE:

That certain promissory note in the original amount of $1,440,000.00 executed of even date herewith Mark R. Honzel, M.D. as trustee of The Mark R. Honzel, M.D. Trust dated October 21, 2010, Alan Jason Coe, an unmarried man, and Andrew W. Spanswick, an unmarried man, in favor of Lender identified in the **Exhibit B** to Promissory Note (Lender Description) attached thereto.

Loan No.:  219020

## EXHIBIT C

### California Provisions

17.  <u>Remedies</u>.

       a.      Beneficiary may enter upon, take immediate possession of, manage, and operate the Trust Property or any part thereof, make repairs and alterations and do any acts that Beneficiary deems reasonable to protect the security of the Deed of Trust, including remedies contained in any of the Other Security Documents; and either with or without taking possession, in its own name, collect the rents, issues and profits, including those past due and unpaid, and apply the rents, less costs and expenses of operation and collection, including reasonable attorneys' fees and the Beneficiary's costs, upon the Indebtedness and in such order as Beneficiary determines.  If Beneficiary requests, Borrower shall assemble and make available to Beneficiary at the Premises any of the Trust Property that has been removed.  None of the foregoing actions shall cure or waive any Event of Default and Beneficiary shall be entitled to exercise every remedy allowed in this Deed of Trust or by law after an Event of Default.

       b.      Beneficiary shall be entitled to the immediate ex parte appointment of a receiver, without notice, to take possession of and protect the Trust Property and to operate it and collect the rents, issues and profits from it.

       c.      Beneficiary may bring suit to foreclose this Deed of Trust or to enforce any of its provisions.

       d.      Trustee may, upon Beneficiary's request, elect to sell the Trust Property or its parts as follows:

       i.      Trustee may proceed as if all of the Trust Property were real property in accordance with subparagraph (iv) below, or Trustee may elect to treat any of the Trust Property which consists of a right in action or which is property that can be severed from the Premises without causing structural damage thereto as if the same were personal property and dispose of the same in accordance with subparagraph (iii) below, separate from the sale of real property, the remainder of the Trust Property being treated as real property.

       ii.      Trustee may cause any such sale or other disposition to be conducted immediately following the expiration of any grace period, if any, provided in this Deed of Trust or the Note, or Trustee may delay any such sale or other disposition as Trustee deems to be in its best interest.  If Trustee conducts more than one sale, Trustee may, at its option, cause the sales to be conducted simultaneously, or successively on the same day, or at different days or times and in such order as Trustee may deem to be in its best interest.

       iii.      If Trustee elects to dispose of Trust Property as personal property as permitted in subparagraph (i) above, it or Beneficiary may dispose of any part thereof in any manner permitted by Article 9 of the California Commercial Code.  Both Borrower and Beneficiary shall be eligible to purchase any part of such property at any sale.  Any such disposition may be either public or private, as Trustee or Beneficiary may so elect, subject to the provisions of the California Commercial Code.

       Trustee or Beneficiary shall give Borrower at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of such property, and if such notice is sent to Borrower at the address above, it shall constitute reasonable notice to Borrower.

Initials _____ Initials _____ Initials _____

Non-Order Search     Page 36 of 38     Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

Without limiting the generality of the foregoing, Trustee is expressly authorized to conduct a "unified sale" under Section 9604 of the California Commercial Code.

iv.      If Trustee elects to sell the Trust Property which is real property or which it has elected to treat as real property, upon such election, Trustee shall give such Notice of Default and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such Notice of Sale as may then be required by law, Trustee, at the time and place specified by the Notice of Sale, shall sell such Trust Property, or any portion thereof specified by Trustee, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement at the time and place noticed for the sale. If the Trust Property consists of several lots or parcels, Trustee may designate the order in which such lots or parcels are offered for sale or sold. Any person, including Borrower, Trustee, or Beneficiary may purchase at the sale. Beneficiary shall have the right to credit upon the amount of the bid made, to the extent necessary to satisfy such bid, the Indebtedness owing to Beneficiary, or if Beneficiary holds less than all of such indebtedness the pro rata part owing to Beneficiary, accounting to all other beneficiaries or noteholders not joining in such bid in cash for the portion of such bid or bids apportionable to such nonbidding beneficiary or noteholder. At the sale the Trustee shall execute and deliver to the purchaser, a deed conveying the property so sold, but without any covenant or warranty, express or implied, after which the purchaser shall be entitled to immediate possession.

v.      If a foreclosure is commenced by the then Trustee, the Beneficiary may at any time before the sale of the Trust Property direct the Trustee to abandon the sale, and may then institute or complete a suit for the collection of the Note and the other Indebtedness, and for judicial foreclosure of this Deed of Trust. It is agreed that if the Beneficiary institutes a suit for the collection of the Note or any other Indebtedness and for the judicial foreclosure of this Deed of Trust, the Beneficiary may at any time before the entry of a final judgment in said suit dismiss it, and require the Trustee to sell the Trust Property under the provisions of this Deed of Trust.

vi.      The recital of facts, such as default, the giving of Notice of Default, and Notice of Sale, terms of sale, purchaser, payment of purchase money, and any other fact affecting the regularity or validity of such sale or disposition in a trustee's deed or other conveyance, shall be conclusive proof of the truth of those facts and conclusive against all persons.

vii.      The proceeds of any sale or disposition, together with any other sums which then may be held by Trustee or Beneficiary, shall be applied as follows: FIRST, to the expenses of such sale or disposition together with Trustee's fees and reasonable attorneys' fees and expenses, Beneficiary's costs and the actual cost of publishing, recording, mailing and posting notice; SECOND, to the cost of any search or other policy of title procured in connection with the sale, if applicable, and recordation and transfer taxes and other charges, if any, on any release or deed of reconveyance; THIRD, to the payment of all amounts secured by this Deed of Trust and all other sums due Beneficiary from Borrower; FOURTH, to all other sums secured hereby; and the remainder, if any, to the person or persons legally entitled thereto in the order of their priority.

25.   Fixture Filing.  From the date of its recording, this Deed of Trust shall be effective as a financing statement filed as a fixture filing as to all goods constituting part of the Trust Property which are or become fixtures related to the real estate described in this Deed of Trust and the Agreements. For this purpose, the following information is set forth:

a.      Name and address of Borrower:
Mark R. Honzel, M.D. as trustee of The Mark R. Honzel, M.D. Trust dated October 21, 2010, Alan Jason Coe, an unmarried man, and Andrew W. Spanswick, an unmarried man 6431 W. 5th Street Los Angeles, CA 90048

Initials _____ Initials _____ Initials _____

Non-Order Search
Doc: CALOSA:2019 00141801

Requested By: sbanks, Printed: 2/22/2019 9:08 AM

    b.      Name and Address of Secured Party:
See **Exhibit B**
c/o So-Cal Capital, Inc., Designated Agent for Beneficiary(s)
20280 SW Acacia Street, Suite 115
Newport Beach, CA 92660

    c.      This document covers goods that are or are to become fixtures.

    d.      Description of Real Estate: See **Exhibit A**.

    e.      Owner of Record of Real Estate: Borrower

    f.      This Financing Statement covers Proceeds.

    g.      This Financing Statement covers Products of the Collateral.

28.    <u>Environmental Provisions</u>.
    f.      <u>Request for Information</u>. Borrower and Beneficiary agree that:

        i.      paragraph 28 of the Deed of Trust is intended as Beneficiary's written request for information and Borrower's written response concerning the environmental condition of the Trust Property as provided by California Code of Civil Procedure §726.5; and

        ii.      each representation, warranty, covenant, or indemnity made by Borrower in this Article or in any other provision of this Deed of Trust or any Loan Document that relates to the environmental condition of the Trust Property is intended by Borrower and Beneficiary to be an environmental provision for purposes of California Code of Civil Procedure §736 and will survive the payment of the Indebtedness and the termination or expiration of this Deed of Trust and will not be affected by Beneficiary's acquisition of any interest in the Trust Property, whether by credit bid at foreclosure, deed in lieu of that, or otherwise. If there is any transfer of any portion of Borrower's interest in the Trust Property, any successor-in-interest to Borrower agrees by its succession to that interest that the written request made pursuant to this Article will be deemed remade to the successor-in-interest without any further or additional action on the part of Beneficiary and that by assuming the debt secured by this Deed of Trust or by accepting the interest of Borrower subject to the lien of this Deed of Trust, the successor remakes each of the representations and warranties in this Deed of Trust and agrees to be bound by each covenant in this Deed of Trust, including, but not limited to, any indemnity provision.

44.    <u>Waiver of Rights</u>. Borrower hereby expressly (a) waives any rights it may have under California Civil Code §2954.10 to prepay the Note, in whole or in part, without penalty, upon acceleration of the maturity of the Note, and (b) agrees that if, for any reason, a prepayment of any or all of the Note is made, whether voluntary or upon or following any acceleration of the maturity of the Note by Beneficiary on account of any default by Borrower, including, but not limited to, any transfer or disposition as prohibited or restricted by paragraph 11, then Borrower shall be obligated to pay, concurrently therewith, the prepayment fee, if any, specified in the Note for a voluntary prepayment of the Note at such time. By initialing in the space provided below, Borrower hereby declares that Beneficiary's agreement to make the Loan at the interest rate and for the term set forth in the Note constitutes adequate consideration, given individual weight by Borrower, for this waiver and agreement.

Non-Order Search        Page 38 of 38        Requested By: sbanks, Printed: 2/22/2019 9:08 AM
Doc: CALOSA:2019 00141801

**EXHIBIT "C"**

**Fill in this information to identify your case and this filing:**

| Debtor 1 | **Alan Jason Coe** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA-L.A.

Case number _____

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

**1.1**

| | | |
|---|---|---|
| **5046 Cofler Lane** | | |
| Street address, if available, or other description | | |
| | | |
| **Valley Village**     **CA**     **91607-0000** | | |
| City     State     ZIP Code | | |
| | | |
| **Los Angeles** | | |
| County | | |

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,600,000.00** | **$1,600,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................................=>**

| |
|---|
| **$1,600,000.00** |

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Fill in this information to identify your case: |
| --- |

| Debtor 1 | **Alan Jason Coe** | | |
| --- | --- | --- | --- |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA-L.A. | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

| Part 1: | List All Secured Claims |
| --- | --- |

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

|  | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion**<br>If any |
| --- | --- | --- | --- | --- |

| 2.1 | **BMW Financial Services**<br>Creditor's Name | Describe the property that secures the claim: | $46,490.00 | $32,000.00 | $14,490.00 |
| --- | --- | --- | --- | --- | --- |

**2018 BMW 530i 10,800 miles**
**Paid for by corporation--Lease**
**Location: 5046 Cofler Lane, Valley**
**Village CA 91607**

**5515 Park Center C**
**Dublin, OH 43017**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **Lease**

Date debt was incurred _____    Last 4 digits of account number _____

Case 2:19-bk-22427-BR    Doc 33    Filed 08/02/19    Entered 08/04/19 13:22:19    Desc
Main Document    Page 22 of 98

Debtor 1    **Alan Jason Coe**

First Name          Middle Name          Last Name          Case number (if known) _____

| 2.2 | **Caliber Home Loans** | | $419,220.00 | $1,600,000.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

**5046 Cofler Lane Valley Village, CA 91607**

PO Box 619063
Dallas, TX 75261

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Deed of Trust**

Date debt was incurred _____    Last 4 digits of account number _____

---

| 2.3 | **Honda Financial Services** | | $15,000.00 | $15,000.00 | $0.00 |

Creditor's Name

Describe the property that secures the claim:

**2017 Honda Civic
Lease
Location: 5046 Cofler Lane, Valley Village CA 91607**

PO Box 60001
City of Industry, CA 91706

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Lease**

Date debt was incurred _____    Last 4 digits of account number _____

---

| 2.4 | **So-Cal Capital Inc** | | $1,440,000.00 | $1,600,000.00 | $0.00 |

Creditor's Name

20280 SW Acacia Street Suite 115
Newport Beach, CA 92660

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**5046 Cofler Lane, Valley Village, CA 91607**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Deed of Trust Securing Business Loan**

Date debt was incurred    **February 2019**    Last 4 digits of account number    **9020**

---

Add the dollar value of your entries in Column A on this page. Write that number here:    **$1,920,710.00**

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 3

**EXHIBIT "D"**

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Mark Robert Honzel** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA-L.A. |
| Case number | ☐ Check if this is an amended filing |

## Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

**1.1**

| 6431 West 5th Street | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|
| Street address, if available, or other description | ■ Single-family home | |
| | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | **Current value of the entire property?** / **Current value of the portion you own?** |
| Los Angeles    CA    90048-0000 | ☐ Land | |
| City    State    ZIP Code | ☐ Investment property | $1,853,000.00    $1,853,000.00 |
| | ☐ Timeshare | |
| | ☐ Other | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| | **Who has an interest in the property?** Check one | **Fee simple** |
| Los Angeles | ■ Debtor 1 only | |
| County | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | ☐ Check if this is community property (see instructions) |
| | ☐ At least one of the debtors and another | |

Other information you wish to add about this item, such as local property identification number:

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.............................................=>** | $1,853,000.00 |

**Part 2: Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Mark Robert Honzel** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA-L.A. |
| Case number (if known) | |

☐ Check if this is an amended filing

Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | **Column A**<br>Amount of claim<br>Do not deduct the value of collateral. | **Column B**<br>Value of collateral that supports this claim | **Column C**<br>Unsecured portion<br>If any |
|---|---|---|---|---|

**2.1 Boston Private Bank & Trust**

Creditor's Name

**10 Post Office Square
Boston, MA 02109**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred _____

Describe the property that secures the claim:

**6431 West 5th Street Los Angeles, CA 90048  Los Angeles County**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **First Mortgage**

Last 4 digits of account number    **4154**

Column A: $750,000.00
Column B: $1,853,000.00
Column C: $0.00

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1  **Mark Robert Honzel**

First Name    Middle Name    Last Name

Case number (if known) _____

| 2.2 | **Porsche Financial Services** | Describe the property that secures the claim: | $110,000.00 | $100,000.00 | $10,000.00 |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

**2018 Porsche Panamera Turbo
5,000 miles
Car Lease through business**

**1 Porsche Drive
Atlanta, GA 30354**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **Lease**

Date debt was incurred  **April 2018**    Last 4 digits of account number    **xxxx**

---

| 2.3 | **So-Cal Capital Inc.** | Describe the property that secures the claim: | $1,440,000.00 | $1,853,000.00 | $337,000.00 |
|---|---|---|---|---|---|

Creditor's Name

**20280 SW Acacia Street
Newport Beach, CA 92660**

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**6431 West 5th Street Los Angeles, CA 90048  Los Angeles County**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **busines loan**

Date debt was incurred _____    Last 4 digits of account number _____

---

Add the dollar value of your entries in Column A on this page. Write that number here:    **$2,300,000.00**

If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:    **$2,300,000.00**

**Part 2:**    List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

**EXHIBIT "E"**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Andrew William Spanswick** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106Sum

### Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

**Part 1:    Summarize Your Assets**

**Your assets**
Value of what you own

| | | |
|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B) | |
| | 1a. Copy line 55, Total real estate, from Schedule A/B............................................. | $ 750,000.00 |
| | 1b. Copy line 62, Total personal property, from Schedule A/B..................................... | $ 61,325.00 |
| | 1c. Copy line 63, Total of all property on Schedule A/B.............................................. | $ 811,325.00 |

**Part 2:    Summarize Your Liabilities**

**Your liabilities**
Amount you owe

| | | |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) | |
| | 2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D*... | $ 1,071,943.41 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) | |
| | 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*............................... | $ 539,220.38 |
| | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*........................... | $ 5,301,351.26 |
| | **Your total liabilities** | $ 6,912,515.05 |

**Part 3:    Summarize Your Income and Expenses**

| | | |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I) | |
| | Copy your combined monthly income from line 12 of *Schedule I*............................................................ | $ 0.00 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J) | |
| | Copy your monthly expenses from line 22c of *Schedule J*.......................................................... | $ 9,393.00 |

**Part 4:    Answer These Questions for Administrative and Statistical Records**

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

☐ Yes

7. **What kind of debt do you have?**

☐ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

■ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum    Summary of Your Assets and Liabilities and Certain Statistical Information    page 1 of 2

Debtor 1    **Andrew William Spanswick**

First Name    Middle Name    Last Name    Case number (if known) _____

| 2.1 2 | **Quickenloans** | | | | | |
|---|---|---|---|---|---|---|
| | Creditor's Name | | | | | |

**Describe the property that secures the claim:**    $409,697.00    $750,000.00    $0.00

**1155 N. La Cienega Blvd. #1114 West Hollywood, CA 90069  Los Angeles County**

**1050 Woodward Ave
Detroit, MI 48226**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Opened 9/16/14 Last Active 5/15/19**

Date debt was incurred    Last 4 digits of account number    **7912**

---

| 2.1 3 | **So-Cal Capital, Inc.** | | | | | |
|---|---|---|---|---|---|---|
| | Creditor's Name | | | | | |

**Describe the property that secures the claim:**    $550,000.00    $0.00    $550,000.00

**Business Debt**

**20280 SW Acacia St., Suite 115
Newport Beach, CA 92660**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred    **2019**    Last 4 digits of account number    **9020**

---

Add the dollar value of your entries in Column A on this page. Write that number here:    **$1,071,943.41**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:    **$1,071,943.41**

**Part 2:**    **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**EXHIBIT "F"**

1    SEAN A. O'KEEFE – State Bar No. 122417
2    **OKEEFE & ASSOCIATES**
     **LAW CORPORATION, P.C.**
3    130 Newport Center Drive, Suite 140
     Newport Beach, CA 92660
4    Telephone: (949) 534-6990
     Facsimile: (949) 590-4987
5    Email: sokeefe@okeefelawcorporation.com
     Counsel to So-Cal Capital, LLC,
6    agent for secured creditors

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11

12                                              Case No. 2:19-bk-19011-BR
     In re
13                                              Chapter 7 Proceeding

14   ALAN JASON COE, an individual,
                                                **STIPULATION RE LIMITED RELIEF**
15                                              **FROM THE AUTOMATIC STAY**
                    Debtor.
16

17

18

19

20

21

22

23

24

25

26

27

28

10/21/2019 9:25 AM

So-Cal Capital, LLC ("So-Cal") and Howard M. Ehrenberg, Chapter 7 trustee for the debtor, Alan Jason Coe, hereby stipulate and agree to limited relief from the automatic stay as provided herein, subject to the approval of the United States Bankruptcy Court for the Central District of California (the "Court").

I

**RECITALS OF FACT**

A.     Alan Jason Coe ("Coe"), Mark R. Honzel ("Honzel") and Andrew W. Spanswick ("Spanswick") (together the "Borrowers") executed that certain Promissory Note dated February 12, 2019, in the original principal amount of $1,440,000 (the "Note"), in favor of the Lenders listed on Exhibit "B" thereto (the "Lenders").

B.     So-Cal Capital, Inc. ("So-Cal") is the designated agent for the Lenders.

C.     Concurrently with the execution of the Note, the Borrowers executed that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture filing (the "Deed of Trust") also dated February 12, 2019.

D.     The Deed of Trust is recorded against the following real properties: 5046 Cofler Lane, Valley Village, California 91607 (the "Cofler Lane Property"); 6431 West 5th Street, Los Angeles, California 90048 (the "5th Street Property") and 1155 North La Cienega Boulevard, Unit 1114 (the "La Cienega Property").

E.     Coe filed a petition under Chapter 7 of the United States Bankruptcy Code on August 1, 2019 initiating Chapter 7 case number 2:19-bk-19011-BR (the "Coe Case").

F.     The Cofler Lane Property is an asset of the Coe bankruptcy estate.

G.     Honzel filed a petition under Chapter 11 of the United States Bankruptcy Code on August 7, 2019 initiating Chapter 11 case number 2:19-bk-19206-BR (the "Honzel Case").

H.     The 5th Street Property is an asset of the Honzel bankruptcy estate.

I.     Spanswick has not filed a petition under the United States Bankruptcy Code.

J.     So-Cal desires to foreclose upon its lien against the La Cienega Property. However, to proceed with this foreclosure, So-Cal must concurrently record notices of default against the Cofler Lane Property, the 5th Street Property and the La Cienega Property.

1      K.      The sale of the La Cienega Property will convey a benefit creditors in the Coe Case

2    and the Honzel Case by reducing the balance that Coe and Honzel owe on the Note. Accordingly,

3    the Trustee and Honzel have agreed to modify the automatic stay in their respective bankruptcy

4    cases to allow the recording of Notice of Defaults against the Cofler Lane Property and 5th Street

5    Property.

6                             **II**

7                       **STIPULATION**

8      1.      The automatic stay applicable in the Coe Case is modified to allow the recording of

9    a Notice of Default against the Cofler Lane Property.

10      2.      So-Cal and the Lenders cannot take any further action against the Cofler Lane

11    Property without obtaining a further modification of the automatic stay applicable in the Coe Case.

12    DATED: October 18, 2019             OKeefe & Associates Law Corporation, P.C.

13

14                                  By: _____

15                                     Sean A. O'Keefe, attorneys for

16                                     So-Cal Capital, LLC

17    DATED: October 21, 2019             By: _____

18                                     Howard M. Ehrenberg,

19                                     Chapter 7 trustee

20

21

22

23

24

25

26

27

28

**EXHIBIT "G"**

SEAN A. O'KEEFE – State Bar No. 122417
**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**
130 Newport Center Drive, Suite 140
Newport Beach, CA 92660
Telephone: (949) 534-6990
Facsimile: (949) 590-4987
Email: sokeefe@okeefelawcorporation.com
Counsel to So-Cal Capital, LLC,
agent for secured creditors

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

|  |  |
|---|---|
| In re | Case No. 2:19-bk-19206-BR |
|  | Chapter 7 Proceeding |
| MARK ROBERT HONZEL, an individual, | **STIPULATION RE LIMITED RELIEF FROM THE AUTOMATIC STAY** |
| Debtor. |  |

1563834.1  26926

10/21/2019 10:42 AM

1    So-Cal Capital, LLC ("So-Cal") and Mark Robert Honzel, through their counsel of record,

2    hereby stipulate and agree to limited relief from the automatic stay as provided herein, subject to

3    the approval of the United States Bankruptcy Court for the Central District of California (the

4    "Court").

5    **I**

6    **RECITALS OF FACT**

7    A.    Alan Jason Coe ("Coe"), Mark Robert Honzel ("Honzel") and Andrew W.

8    Spanswick ("Spanswick") (together the "Borrowers") executed that certain Promissory Note dated

9    February 12, 2019, in the original principal amount of $1,440,000 (the "Note"), in favor of the

10    Lenders listed on Exhibit "B" thereto (the "Lenders").

11    B.    So-Cal Capital, Inc. ("So-Cal") is the designated agent for the Lenders.

12    C.    Concurrently with the execution of the Note, the Borrowers executed that certain

13    Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture filing (the

14    "Deed of Trust") also dated February 12, 2019.

15    D.    The Deed of Trust is recorded against the following real properties: 5046 Cofler

16    Lane, Valley Village, California 91607 (the "Cofler Lane Property"); 6431 West 5th Street, Los

17    Angeles, California 90048 (the "5th Street Property") and 1155 North La Cienega Boulevard, Unit

18    1114 (the "La Cienega Property").

19    E.    Coe filed a petition under Chapter 7 of the United States Bankruptcy Code on

20    August 1, 2019 initiating Chapter 7 case number 2:19-bk-19011-BR (the "Coe Case").

21    F.    The Cofler Lane Property is an asset of the Coe bankruptcy estate.

22    G.    Honzel filed a petition under Chapter 11 of the United States Bankruptcy Code on

23    August 7, 2019 initiating Chapter 11 case number 2:19-bk-19206-BR (the "Honzel Case").

24    Honzel serves as the debtor-in-possession ("DIP") in the Honzel Case.

25    H.    The 5th Street Property is an asset of the Honzel bankruptcy estate.

26    I.    Spanswick has not filed a petition under the United States Bankruptcy Code.

27

28

1      J.      So-Cal desires to foreclose upon its lien against the La Cienega Property. However,

2   to proceed with this foreclosure, So-Cal must concurrently record notices of default against the

3   Cofler Lane Property, the 5th Street Property and the La Cienega Property.

4      K.      The sale of the La Cienega Property will convey a benefit to creditors in the Coe

5   Case and the Honzel Case by reducing the balance that Coe and Honzel owe on the Note.

6   Accordingly, the DIP and Chapter 7 trustee in the Coe Case have agreed to modify the automatic

7   stay in their respective bankruptcy cases to allow the recording of Notices of Default against

8   Cofler Lane Property and 5th Street Property.  So-Cal has agreed that despite its recording of the

9   Notices of Default, it will not take any further steps to foreclose on the Cofler Lane Property or

10  5th Street Property without first obtaining further modifications of the automatic stays in the

11  Honzel Case and Coe Case.

12

13                                   **II**

14                              **STIPULATION**

15      1.      The above Recitals of Fact are incorporated into the Stipulation.

16      2.      The automatic stay applicable in the Honzel Case is modified solely to allow So-

17  Cal to record a Notice of Default against the 5th Street Property.

18      3.      So-Cal and the Lenders shall not take any further action against the 5th Street

19  Property without first obtaining a further modification of the automatic stay applicable in the

20  Honzel Case.

21

22  DATED: October 21, 2019                OKeefe & Associates Law Corporation, P.C.

23

24                                         By: *Sean OKeefe*
                                               _____
25                                             Sean A. O'Keefe, attorneys for
                                               So-Cal Capital, LLC

26

27

28

1    DATED: October 21, 2019                    Danning, Gill, Diamond & Kollitz, LLP

2

3                                               By: _____
                                                    Uzzi O. Raanan, attorneys for
4                                                   Mark Robert Honzel, Debtor and
                                                    Debtor-in-Possession
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF SEAN A. O'KEEFE

I, Sean A. O'Keefe, hereby declare and state as follows:

1.      I am over the age of eighteen years old and the facts stated herein are within my personal knowledge. If called upon to testify to the same I could and would testify competently thereto.

2.      Attached hereto is as Exhibit "H" is a calculation that sets forth one potential disposition scenario for the Cofler Lane Property, the 5th Street Property and the La Cienega Property based upon existing debt and value figures.

3.      Attached hereto is as Exhibit "I" is a true and correct copy of a Stipulation for Relief from Stay executed by the Chapter 7 trustee in the bankruptcy case of Andrew W. Spanswick.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 22nd day of November 2019, in Orange County, California.


*Sean O'Keefe*

_____
Sean A. O'Keefe

**EXHIBIT "H"**

**Mark Robert Honzel / Alan Jason Coe / Andrew William Spanswick**
Schedule of Real Estate

SO-CAL Balance: 1,495,627 [1]

| Address | Unit | City, State, Zip | Appraised Value [2] | First DOT [3] | 1st Lien LTV | Closing Costs | Proceeds Available for SO-CAL | Allocation to SO-CAL Balance | Allocation (%) | Homestead Exemption | Proceeds Available for Unsecured Claims |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Balance as of May '18 | | 5.0% | | | | | |
| 6431 W 5th St | | Los Angeles, CA 90048 | 1,985,000 | 750,000 | 38% | 99,250 | 1,135,750 | 592,797 | 39.6% | 75,000 | 467,953 |
| 5046 Coffer Ln | | Valley Village, CA 91607 | 1,765,000 | 419,220 | 24% | 88,250 | 1,257,530 | 656,360 | 43.9% | 100,000 | 501,170 |
| 1155 N La Cienega Bl. | #1114 | West Hollywood, CA 90069 | 930,000 | 411,283 | 44% | 46,500 | 472,217 | 246,470 | 16.5% | 100,000 | 125,747 |
| | | | 4,680,000 | 1,580,503 | 34% | 234,000 | 2,865,497 | 1,495,627 | 100.0% | 275,000 | 1,094,870 |

[1] SO-CAL balance as of 10/31/19, does not include fees and costs.
[2] Appraised value as of January 2019.
[3] Balance of 1st Deed of Trust per Debtors' schedules; does not included accrued interest, fees and costs.

SO-CAL Capital, Inc.

DRAFT
For Discussion Purposes Only

**EXHIBIT "I"**

SEAN A. O'KEEFE – State Bar No. 122417
**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**
130 Newport Center Drive, Suite 140
Newport Beach, CA 92660
Telephone: (949) 534-6990
Facsimile: (949) 590-4987
Email: sokeefe@okeefelawcorporation.com
Counsel to So-Cal Capital, LLC,
agent for secured creditors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re

ANDREW WILLIAM SPANSWICK,
an individual,

                    Debtor.

Case No. 2:19-bk-22427-BR

Chapter 7 Proceeding

**STIPULATION RE LIMITED RELIEF
FROM THE AUTOMATIC STAY**

1    So-Cal Capital, LLC ("So-Cal") and David Goodrich, as the duly appointed and acting

2    Chapter 7 trustee (the "Trustee") in this case, hereby stipulate and agree to limited relief from the

3    automatic stay as provided herein, subject to the approval of the United States Bankruptcy Court

4    for the Central District of California (the "Court").

5                                            **I**

6                                       <u>**RECITALS**</u>

7    So-Cal has represented to the Trustee that the following statements are true and correct:

8    A. Alan Jason Coe ("Coe"), Mark R. Honzel ("Honzel") and Andrew W. Spanswick

9    ("Spanswick") (together the "Borrowers") executed that certain Promissory Note dated

10   February 12, 2019, in the original principal amount of $1,440,000 (the "Note"), in favor of

11   the Lenders listed on Exhibit "B" thereto (the "Lenders").

12   B. So-Cal Capital, Inc. ("So-Cal") is the designated agent for the Lenders.

13   C. Concurrently with the execution of the Note, the Borrowers executed that certain Deed

14   of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture filing (the

15   "Deed of Trust") also dated February 12, 2019.

16   D. The Deed of Trust is recorded against the following real properties: 5046 Cofler Lane,

17   Valley Village, California 91607 (the "Cofler Lane Property"); 6431 West 5th Street, Los

18   Angeles, California 90048 (the "5th Street Property") and 1155 North La Cienega

19   Boulevard, Unit 1114 (the "La Cienega Property").

20   E. The legal description for the La Cienega Property is attached hereto as Exhibit "1".

21   F. Coe filed a petition under Chapter 7 of the United States Bankruptcy Code on August

22   1, 2019 initiating Chapter 7 case number 2:19-bk-19011-BR (the "Coe Case").

23   G. The Cofler Lane Property is an asset of the Coe bankruptcy estate.

24   H. Honzel filed a petition under Chapter 11 of the United States Bankruptcy Code on

25   August 7, 2019 initiating Chapter 11 case number 2:19-bk-19206-BR (the "Honzel Case").

26   I. The 5th Street Property is an asset of the Honzel bankruptcy estate.

27   J. Spanswick filed a petition under the United States Bankruptcy Code on October 21,

28   2019 initiating Chapter 7 case number 2:19-bk-22427-BR (the "Spanswick Case").

K.  The La Cienega Property is an asset of the Spanswick bankruptcy estate.

L.  So-Cal desires to record notices of default ("NODs") against the Cofler Lane Property, the 5th Street Property and the La Cienega Property to protect its position as the second lienholder on these properties from a foreclosure by the first lienholders.

M. Honzel and the Chapter 7 trustees in the Coe Case and the Spanswick Case have agreed to stipulate to allow So-Cal to record the NODs pending making final decisions regarding the disposition of the Cofler Property, the 5th Street Property and the La Cienega Property.

Based upon the foregoing representations, which are not binding upon the Trustee, the Trustee has agreed to stipulate as provided below.

## II

## **STIPULATION**

1.      The automatic stay applicable in the Spanswick Case is modified to allow the recording of a Notice of Default against the La Cienega Property.

2.      So-Cal and the Lenders cannot take any further action against the La Cienega Property without obtaining a further modification of the automatic stay applicable in the Spanswick Case. So-Cal reserves all of its rights to seek such relief and the Chapter 7 trustee reserves all of the estate's rights to oppose such relief

DATED: November 19, 2019          OKeefe & Associates Law Corporation, P.C.

By: _____
        Sean A. O'Keefe, attorneys for
        So-Cal Capital, LLC

DATED: November 19, 2019          By: _____
        David Goodrich, Chapter 7 trustee

-3-

**EXHIBIT A**

1

2   A CONDOMINIUM COMPRISED OF:

3   PARCEL 3A:

4   THAT PORTION OF LOT 1 OF TRACT NO. 33213, IN THE CITY OF WEST HOLLYWOOD,
    COUNTY  OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
5   BOOK 906, PAGES 70  AND 71 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER
    OF SAID COUNTY, SHOWN AND DEFINED AS UNIT 151 ON THE CONDOMINIUM PLAN
6   RECORDED JANUARY 30, 1979 AS INSTRUMENT NO. 79-124606, OF OFFICIAL
7   RECORDS OF SAID COUNTY.

8   PARCEL 3B

9   AN UNDIVIDED 006002 INTEREST IN AND TO LOT 1 OF SAID TRACT NO. 33213.
    EXCEPT THEREFROM THOSE PORTIONS SHOWN AND DEFINED AS UNITS 1 TO 178
10  INCLUSIVE ON SAID CONDOMINIUM PLAN.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 130 Newport Center Drive, Suite 140, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 22, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On November 22, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **11/22/2019** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Via Federal Express</u>
Hon. Barry Russell
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/22/2019 | Sean A. O'Keefe | /s/ Sean A. O'Keef5 |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**NEF LIST**

- **David M Goodrich (TR)**   dgoodrich@wgllp.com,
  c143@ecfcbis.com;dgoodrich11@ecf.axosfs.com;lrobles@wgllp.com
- **Charles M Green**   charles@greenlawcorp.com
- **Ketan G Sawarkar**   ketan.sawarkar@americaninfosource.com
- **Valerie Smith**   claims@recoverycorp.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Isaiah Weedn**   iweedn@sheppardmullin.com, sdelgado@sheppardmullin.com
- **Gilbert R Yabes**   ecfcacb@aldridgepite.com,
  GRY@ecf.inforuptcy.com;gyabes@aldridgepite.com

1

## REGULAR MAIL LIST

**Notice and Motion and Exhibits**

2

3    Andrew W. Spanswick
     1155 N. La Cienega Blvd. #1114
     West Hollywood, CA 90069

4

5    Mark Honzel
     6431 West 5th Street
     Los Angeles, CA 90048

6

7    Alan Jason Coe
     5046 Cofler Lane
     Valley Village, CA 91607

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28